**Patti J. FREEMAN, Appellant,**

v.

**David James FREEMAN, Appellee.**

No. 813.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 20, 1973.

Joe J. Newman, Houston, for appellant.

Edward L. Bailey, Hendrix & Bailey, Jacob J. Walla, W. H. Jordan, Jr., Jordan, Zwernemann, Simmons, Houston, for appellee.

TUNKS, Chief Justice.

This is an appeal from a decree in a divorce action wherein the sole complaints made concern the awards of property between the parties. After the nonjury trial of the case a judgment was rendered granting the divorce, awarding custody of the minor children to the wife, requiring that child support be paid by the husband in the amount of $400 per month for the minor children until the youngest reaches 18 years of age, awarding fees to the wife's attorneys and making division of the parties' separate and community property. From the judgment Patti J. Freeman perfects this appeal.

Essentially appellant's points of error are concerned with the trial court's division of the property in four respects. First, appellant urges no evidence, insufficient evidence and great weight points of error respecting the trial court's finding the husband's corporate retirement plan to have a present value of $13,071.88. Second, the same evidence points of error are raised as to the court's finding the husband's United States Air Force retirement benefits to have a present value of $23,123.10. Third, the trial court erred in considering as of separate value, the shares in a corporation and also in awarding to appellant certain realty owned by that corporation. Fourth, appellant complains of

the trial court's division of the property as a whole as being inequitable and failing to take account of the parties' earning capacities and fault.

David James Freeman, the husband, was employed as an engineer by Tenneco, Inc. He had procured from his employer a letter dated September 29, 1972 showing the current status of his interests in employee benefit plans. The parties stipulated that the letter be introduced as evidence. It included the following language:

"*Retirement Income Plan—This is a deferred income plan that provides financial assistance after attaining normal retirement at age 65. Present cash balance of this plan equals $39,348.89 and is available to you only upon termination of employment or attaining normal retirement age. Your projected monthly benefit at age 65 is presently $900.23/month."

The letter had been typed reciting, "Present cash value of this plan equals $39,348.89 . . . ." The typed word "value" was stricken out and the word "balance" written in with a pen. In evidence is an annual statement dated December 31, 1971 and furnished by the company to the appellee wherein it is recited, "Your retirement income cash value is $35,723.80."

The husband called as a witness a certified public accountant who testified that he had experience in the calculation of the present values of sums payable in the future. He was asked on direct examination to "compute the present value of the sum of $39,348.89, discounted at six and a half percent, payable at age sixty-five." (The husband was 49 years old.) In response to that request the witness testified that discounted at six and a half percent the present value was $14,098.61 and discounted at seven and a half percent it was $12,045.14. The trial judge filed findings of fact which included a finding that the present value of the community interest in the retirement plan was $13,071.88, splitting the difference between the two figures given by the witness. All of the interest in the retirement plan was acquired during the marriage. The trial court's judgment decreed that the wife be paid $10,000 out of this retirement plan's payments when those payments are made. The remaining interest in the benefits was awarded to the husband.

■ Appellant's first point of error states that the trial court erred in its finding as to the present value of the community interest in the husband's retirement plan. That point is sustained. The accountant's testimony, which was followed by the trial judge in making his finding, was erroneous in that it was based on a false assumption. The witness assumed that at age 65 the husband was going to be paid $39,348.89 referrable to the present value of his retirement plan. That is not what the husband will be paid. He will be paid a monthly pension, $900.23 of which will be attributable to the present value of his pension plan. Furthermore the evidence shows he could quit his job at any time and draw in cash the present balance. If he quits or dies before 65 a cash sum will be paid to him or his estate, $39,348.89 of which had accrued at the date of the letter. The accountant's testimony on cross-examination shows that he did not consider those factors when he, on direct examination, testified as to present value. On cross-examination he testified:

"Q If he were to quit today and get $39,000, if he could under this plan, would your testimony still be the same?

A In other words—

Q Except that it would be taxable as of the present time?

A That is correct, my testimony would not be.

Q What would it be if he quit today and got $39,348.89, whatever this letter says?

A I would say it would be that, less whatever tax."

The trial judge erred in his finding of fact as to the value of the pension plan. Under the record before this Court and the trial court that community asset prima facie had a value of $39,348.89. There may be other facts which would require an adjustment of that value, but those facts are not in the record. No one proved all of the provisions of the pension plan adopted by Tenneco, Inc. The accountant's suggestion that the $39,348.89 should have deducted from it the amount of income tax that would be paid upon it if it were withdrawn in cash is not acceptable. That suggestion assumes that it is to be withdrawn in cash and the husband's testimony is that that will not be done. Under the testimony it is the husband's intention that the present value of the pension plan will be withdrawn by the husband at the rate of $900.23 per month after he reaches 65 years of age. There also exists the possibility that the husband will die before he reaches 65, in which event the value will be paid to his estate or his legatees. Under either of those circumstances it is probable that the tax payable upon it will be less than would be the amount of income tax payable if it were now withdrawn in a lump sum. While it would be proper in computing the present value to make a reasonable deduction for the present value of taxes that may become payable in the future the amount of that deduction would probably be less than the income tax payable if it were withdrawn now.

The evidence showed that Mr. Freeman had served 20 years in the Air Force and would draw retirement pay in the amount of $460.29 a month upon reaching 60 years of age. Approximately 7½ years of that service had been on active duty before these parties were married and 12½ years on reserve duty during the marriage. There is no dispute between the parties that their community acquired an interest in this military retirement plan. The trial court found that the community had approximately 38% interest in the retirement plan and that the other 62% belonged to the husband's separate estate. The present value of the community interest was found to be $8,364.74. The appellant however, complains of the court's findings as to the percentage of that plan which the court found belonged to the community and as to the present value of that interest.

■ The appellant wife contends that the community interest in this retirement is represented by the fraction $^{12.5}/_{20}$. That contention loses sight of the fact that under the applicable statutes a year of active duty contributes more to the retirement than a year of reserve duty. Armed Forces, 10 U.S.C. secs. 1332 (1959), 1333 (1956) and 1401 (1966). The trial court's computation of the percentage of this retirement plan that accrued to the community was substantially correct. There seems to be a slight error but it is in the favor of the appellant and thus immaterial to this appeal.

The appellee's accountant witness also computed the present value of the military retirement benefits. Life expectancy tables showed that the husband, 49 years old at the date of the trial, then had a life expectancy of 23.8 years. The accountant computed the amount that would be paid under the plan by assuming that the husband would live 12.8 years after he became 60 and started drawing retirement pay at $460.29 per month. The value of those payments was then discounted to the date of the trial, again using alternative discount factors of six and a half and seven and a half percent. The court again split the difference between the two figures and found the community fractional interest in the plan to have a present value of $8,364.74.

■ The appellant's complaint as to this finding is based upon the fact that at age 60 the husband will have a life expectancy of 15.8 years rather than the 12.8 years the witness used in making the calculation. The military retirement plan will not pay

anything to anyone if the husband dies before reaching 60 years of age. The present life expectancy includes a consideration of the possibility of death before 60. For that reason it properly was used in the computation of present value of the military retirement benefits.

The appellant's point of error as to the court's finding of the value of the community interest in the military retirement benefits is overruled.

■ We note that the use of a six and a half or seven and a half percent discount factor is of questionable validity. In this case, however, the appellee's accountant witness testified that in his opinion, based on prevailing interest rates, such procedure was proper. The wife offered no evidence to the contrary. She did not offer in evidence computations based upon lower discount rates. Both of the parties were shown to have some degree of sophistication in investment matters. Under the facts shown in this record the trial judge did not abuse his discretion in this respect.

■ The trial judge's findings of fact include findings that the shares of stock in a corporation named Patti Freeman Realty Company had a value of $4,400 and that certain identified lots of land had a value of $4,000. The judgment purports to give the wife both the shares and the lots as part of her share of the community. One of appellant's points of error states that the court erred in such evaluation. That point of error is sustained. The evidence shows that the lots were owned by the corporation as its principal asset. The court erred in concluding that the lots awarded to the wife had a value separate and apart from the value of the corporate shares.

■■ There remains the question as to whether the trial court's errors in its findings as to the value of the Tenneco retirement plan and as to the corporate shares require a reversal of this case. We are cognizant of the often repeated rule that the trial judge has under Tex.Family

Code Ann. art. 3.63 (1971) V.T.C.A., broad discretion in regard to the division of the community estate between the parties to a divorce case. His judgment as to such division ordinarily is subject to review only for abuse of discretion. In this case the division was quite generous to the wife and it would be well within the limits of the trial judge's discretion if it were not shown that the exercise of that discretion was based upon erroneous findings of fact as to the value of some of the assets of the community. This record does show such errors and they are demonstrable mathematically. The items as to which the errors were made represent a substantial percentage of the community value. A consideration of their true values might well lead to the trial court's exercise of his discretion in making a different division. See Bell v. Bell, 389 S.W.2d 126 (Tex.Civ. App.—Houston 1965, no writ). For that reason we conclude that the trial court's judgment herein must be reversed and the case remanded.

Reversed and remanded.