Barbara Jane SIMPSON, Appellant,

v.

Charles Bob SIMPSON, Appellee.

No. 05–83–00087–CV.

Court of Appeals of Texas, Dallas.

July 10, 1984.

Rehearing Denied Sept. 20, 1984.

Jack G. Kennedy, Kennedy, Minshew, Campbell, Cain & Seidlets, Sherman, for appellant.

David M. Stagner, Rayburn Nall, Sherman, for appellee.

Before GUITTARD, C.J., and CARVER and GUILLOT, JJ.

GUITTARD, Chief Justice.

Dr. Charles Simpson and Barbara Simpson were married for approximately twen-

ty-three years. She filed suit for divorce on July 24, 1980. A decree of divorce was entered on November 15, 1982. Mrs. Simpson contends that the court abused its discretion in dividing the community estate. We agree.

The controversy concerns the valuation of the community estate, which includes shares in a professional corporation and interests in pension and profit sharing plans. Mrs. Simpson asserts that a proper valuation of these assets would show that the division was grossly disproportionate. She also asserts error in the amount of attorney's fees awarded to her. We agree with her contentions as regards the deduction of deferred federal income tax from the present value of the pension and profit-sharing plans and Dr. Simpson's disposition of some of the income pending divorce. Accordingly, we reverse and remand to the trial court for a new property division.

### Goodwill of Corporation

Dr. Simpson, a pathologist, was employed by Simpson and Steele, a professional corporation of which he and Dr. Steele were equal owners. The two doctors provided pathology services for two hospitals. The contracts for the services were between the two doctors and the hospitals and made no mention of the corporation. The executive director of one of the hospitals testified that the contracts were with the doctors as individuals and that he was unaware of the existence of the corporation until the day of the trial. Moreover, the contracts provide that the hospitals may terminate them at any time on sixty days' notice.

Mrs. Simpson asserts that the nature of the practice of pathology is such that the corporation has goodwill apart from the individual goodwill of the doctors, as did the corporation in *Geesbreght v. Geesbreght*, 570 S.W.2d 427, 434–36 (Tex.Civ. App.—Fort Worth 1978, writ dism'd). On this theory her expert witness testified that the corporation had a value of over $900,-000. Dr. Simpson contends that the goodwill of the corporation is indistinguishable

from the individual goodwill of himself and Dr. Steele, and does not constitute an asset of the community estate, as held in *Nail v. Nail*, 486 S.W.2d 761, 763–64 (Tex.1972).

We conclude that the issue is one of fact under the present record. In the absence of formal findings of fact, we must presume that every disputed factual issue was found in support of the judgment if there is sufficient evidence to support the finding. *Lassiter v. Bliss*, 559 S.W.2d 353, 358 (Tex.1977); *Fuqua v. Fuqua*, 541 S.W.2d 228, 230 (Tex.Civ.App.—Tyler 1976, no writ). Accordingly, we hold that the trial court could properly find that the corporation had no substantial goodwill and thus disregard the testimony of Mrs. Simpson's expert on this issue.

### Deduction of Deferred Income Tax

Dr. Simpson was awarded the entire community interest in the corporate pension and profit sharing plans. Both parties presented expert testimony as to the value of these plans. Dr. Simpson's witness testified that the face value of the plans should be reduced by his current federal income tax rate because these taxes would be due when the monies are taken out of the accounts. Mrs. Simpson's expert testified that the deferred taxes should not be taken into account. She argues that, when the monies are withdrawn, Dr. Simpson's tax rate may be lower, and this prospect is a major reason for deferring taxes. Furthermore, she points out that Dr. Simpson will have the use of the full amount of these monies before payment of any tax. This benefit, she insists, has a substantial value which tends to compensate for any future tax liability.

The impropriety of discounting the value of deferred compensation plans by the hypothetical present tax liability on the liquidating value was recognized in *Freeman v. Freeman*, 497 S.W.2d 97 (Tex.Civ. App.—Houston [14th Dist.] 1973, no writ). Chief Justice Tunks held:

While it would be proper in computing the present value to make a reasonable deduction for the present value of taxes

that may become payable in the future the amount of that deduction would probably be less than the income tax payable if it were withdrawn now. 497 S.W.2d at 100.

We hold, as in *Freeman*, that the valuation of Dr. Simpson's pension and profit-sharing plans by discounting the hypothetical tax liability on present liquidation is erroneous and should not be considered. These assets have a prima facie value equal to their face value in the absence of proper evidence of a reasonable deduction for the future tax liability. *Freeman*, 497 S.W.2d at 100. If they are given their face value, it appears that Dr. Simpson was awarded a disproportionate share of the community assets. This inequality is not justified by any disparity of income or other circumstances. Thus, it appears that a proper valuation will probably result in a division more favorable to Mrs. Simpson.

### Earnings Pending Divorce

Mrs. Simpson also complains that the court failed to consider Dr. Simpson's earnings pending the divorce. She relies on evidence showing that these earnings, including contributions to the pension and profit-sharing plans, amounted to over $300,000, of which she was awarded only $43,000 as her share of the bonuses paid to Dr. Simpson during this period. Dr. Simpson contends that these earnings cannot be considered because there is no evidence showing that any of them remained subject to division at the time of the divorce.

We cannot agree that they should not be considered. Although there was no showing as to how much of the earnings remained, there was undisputed evidence that Dr. Simpson spent a substantial portion on gifts and other favors for another woman with whom he was having an affair. He was not required to account for these expenditures and no allowance for them was made in the division of the community assets. Regardless of who was at fault in breaking up the marriage, a proper allowance should be made for Mrs. Simp-

son's interest in the funds spent for this purpose. The dissipation of the funds does not prevent their consideration in dividing the remaining assets. *Reaney v. Reaney*, 505 S.W.2d 338, 340 (Tex.Civ.App.—Dallas 1974, no writ). The trial court's failure to make such an allowance appears to have contributed further to a disproportionate division.

### Attorney's Fees

Mrs. Simpson asserts that the court erred in awarding her only $5,000 in attorney's fees when the record establishes that she is entitled to much more. The award of attorney's fees is merely one factor to be considered in an equitable division of the property. *Lipshy v. Lipshy*, 525 S.W.2d 222, 227 (Tex.Civ.App.—Dallas 1975, writ dism'd). On another trial the court is instructed to consider the attorney's fees of both parties, along with their several earning capacities, in determining a proper division.

The decree is reversed and the cause is remanded insofar as it concerns division of the property with instructions to hear the evidence and make a new division in accordance with this opinion. Otherwise the decree is affirmed. Costs are taxed against Dr. Simpson.