Esther OSUNA, Appellant,

v.

Socorro QUINTANA, Appellee.

No. 13-97-527-CV.

Court of Appeals of Texas,
Corpus Christi.

March 25, 1999.

Dean W. Greer, Attorney at Law, Roberto Guerra, Guerra, Madrigal & Lorenzana, L.L.P., San Antonio, for Appellant.

Sue M. Hall, Law Office of Sue M. Hall, H. E. Mendez, San Antonio, for Appellee.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

This is an appeal from a decree of divorce in which appellee Socorro Quintana was awarded a $460,000 joint and several liability judgment against her husband, Jose Quintana, and his mistress, appellant Esther Osuna. Socorro was also awarded two motor vehicles and $26,400, said sum representing the proceeds from the foreclosure of a house, all of which Jose had purchased for Esther. Esther raises two issues in which she complains about the award of the $460,000 money judgment, and the trial court awarding to Socorro property which Esther asserts belongs to her. We reform the judgment by reducing the money judgment to $355,000, and as reformed, affirm.

### FACTS

Jose and Socorro were married in Mexico in 1958. In 1971, Jose met Esther and commenced an affair with her that continued to the time of trial. In 1983, while still married to Socorro, Jose participated in a ceremonial marriage with Esther. In 1984, their first child was born. After that time, Jose supported Esther and the child, plus two more children he had with her.

During the 1970's and 1980's Jose earned a very high income through the operation of his Texas business, Farm Supply House, Inc. Jose had sole management and control of this company and the income it generated. He also owned and controlled other businesses, including a ranch in California, the Quintana Horse Ranch in Seguin, Texas, where he bred, stabled, and trained horses, five restaurants, a packing plant, and two boutiques in California called Osuna's. Socorro had no involvement in or knowledge of the management of these businesses.

In September 1985, Jose purchased a house [1] for Esther and the children. As a down payment on the house, Jose paid $164,465.32 drawn on the Quintana Horse Ranch business account. In October, he paid $20,992.51 to furnish the house. These funds also came from the Quintana Horse Ranch business account. Over the next seven years, Jose made the monthly $1800 mortgage payment on the house. In November 1994, Esther paid $83,000 to refinance the Hidden View house. The record is not clear what precipitated the action, but it is apparent that sometime after 1994, the house was foreclosed upon, resulting in a surplus of $26,400. Chicago Title Company interpleaded this money into the registry of the Court.

In 1985, Jose purchased two Mercedes Benz automobiles for $12,500 each. Approximately five years later, he sold one of the automobiles to Esther for $5,000, but continued to drive the car. In 1994, shortly before Socorro filed for divorce, Jose purchased Esther a new Dodge minivan for which he paid approximately $17,000 in cash.

The court granted the divorce, and awarded to Socorro the house in which she resided, the $26,400 in the court's registry, the 1985 Mercedes Benz, and the 1994 Dodge minivan. The court also awarded Socorro a joint and several liability judgment in the amount of $460,000, representing money that Jose had allegedly given to Esther during 1994 in fraud of the community estate.

Both Esther and Jose properly perfected an appeal. When neither party filed an appellant's brief, notice was given that the appeal would be dismissed if good cause was not shown within ten days. Esther

---

1. The house will hereafter be referred to as "the Hidden View house."

filed her brief within the ten-day period, but Jose did not. Thereafter, the Court granted Socorro's motion to dismiss Jose's appeal for want of prosecution, and severed Jose from this appeal.

## ANALYSIS

■ We turn first to Socorro's contention that Esther's issues are multifarious and present nothing for review. *See Mansfield v. City of Port Lavaca,* 698 S.W.2d 429, 435 (Tex.App.—Corpus Christi 1985, no writ). We disagree. Esther's first issue is whether the trial court erred in entering judgment against her. She presents four different reasons why the court erred. Each reason is designated as a subpart to the main issue and is separately briefed and argued. Esther's second issue addresses the trial court's divestiture of three items of personal property Esther claims as belonging to her and the award of this property to Socorro. Esther presents three reasons to support her claim of error, each being sufficiently presented, briefed, and argued. Because Esther's issues adequately direct our attention to the errors of which she complains, we overrule Socorro's contention. *See Superior Packing, Inc. v. Worldwide Leasing & Financing, Inc.,* 880 S.W.2d 67, 69 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

In issue number one, Esther complains the trial court erred in awarding a $460,000 judgment against her in favor of Socorro. The judgment represents three deposits of $140,000, $215,000 and $105,000 [2] that Jose allegedly made for Esther's benefit into accounts at NationsBank and Groos Bank. Esther asserts error in that: (1) there was no evidence the funds were

taken from the community estate; (2) any evidence of the transfers was inadmissible and improperly admitted; (3) Socorro did not prove as a matter of law the transfers were a fraud on the community; and (4) Esther should be liable for only one-half of the amount of the alleged transfers.

The only reference at trial to these deposits was Esther's testimony, taken January 10, 1995, at a hearing on Socorro's motion for temporary orders.

## (1) NO EVIDENCE THE MONEY WAS TAKEN FROM THE COMMUNITY ESTATE

■ Esther claims there is no evidence the money at issue was community property. Any income earned during a marriage is presumed to be community property. TEX. FAM.CODE ANN. §§ 3.003(a) and 3.102(a)(1) (Vernon 1997); *Yaklin v. Glusing, Sharpe & Krueger,* 875 S.W.2d 380, 385 (Tex.App.—Corpus Christi 1994, no writ). Jose testified that during his marriage to Socorro he owned his own business, Farm Supply House, Inc. Socorro testified as to Jose's other business ventures which generated income during the marriage. There was no testimony concerning separate property income. Thus, any monies that Jose gave to Esther are presumed to be community funds. We now review the evidence adduced at trial to determine if the presumption of community property was rebutted.

### $140,000 DEPOSIT

Esther testified that she opened an account at NationsBank on November 6, 1994, with a deposit of $140,000. She admitted that this money came from Jose. There was no evidence admitted to rebut the presumption that the $140,000 was Jose and Socorro's community property.

---

**2.** That the judgment is referring to these deposits and not the $83,000 used by Esther to refinance the Hidden View house is evidenced by two factors. First, the sum of these deposits equals the amount of the judgment, $460,000. Second, the record supports this conclusion. At the close of trial, the following exchange took place:

THE COURT: ... The judgment against Ms. Osuna will be granted. And how much are you asking for, Counselor?

MS. HALL: We're asking for 215—we're asking for 460. We proved up 215 and 140 in the testimony—and 105.

THE COURT: 215—

MS. HALL:—and 140 and 105 comes to 460.

THE COURT: All right. You can have it....

### $215,000 Deposit

There is some confusion in the record regarding the deposits which totaled $215,-000. As stated, Esther testified the NationsBank account into which these funds were deposited was opened November 6, 1994. Socorro's counsel then asked Esther, "During the period of September 7th through October 5th, 1994, you made deposits in excess of $215,000 to this account; is that correct?" When Esther hesitated and indicated she did not know if she made the deposits, the following transpired:

> COUNSEL: This is page 2 of the various deposits you made in the account throughout the course of September and early October. Does that help you remember now?
>
> ESTHER: Probably.
>
> COUNSEL: The money that was deposited, that $215,000, also came from Jose Quintana, didn't it?
>
> ESTHER: I believe so.

Obviously, Esther could not have made deposits in September and October into an account that was not opened until November. However, Esther has structured her issue as a "no evidence" complaint. Applying the appropriate "no evidence" standard of review, we consider only the evidence and inferences which support the judgment and disregard all contrary evidence and inferences. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995); *Lewelling v. Lewelling,* 796 S.W.2d 164, 166 (Tex.1990). Because Esther testified the $215,000 came from Jose, we must disregard the discrepancy in the dates and conclude the $215,000 was Jose and Socorro's community property.

### $105,000 Deposit

 Esther also had an account at Groos Bank. The only testimony regarding the Groos Bank account is as follows:

> Q: With reference to that account at Groos Bank deposits in the period from January to mid-November of 1994 is $105,116; is that correct:
>
> A: I'm sorry, from January to—
>
> [objection by counsel which the court overruled]
>
> Q: —to mid-November.
>
> A: A hundred and—I'm sorry?
>
> Q: $105,000; is that correct?
>
> A: If you say so.
>
> Q: If you divide that by 11 months, that's $9,500 a month; is that correct?
>
> A: If you say so.

There was no testimony concerning the source of the $105,000; in particular, there was no evidence that this money came from Jose. Without evidence that Jose provided Esther with the funds to make this deposit, the trial court erred in finding the $105,000 represented community funds. Issue number two is sustained with respect to the $105,000 deposit.

### (2) Evidence of Transfers was Improperly Admitted

 Esther claims evidence of the deposits was improperly admitted because Socorro did not have the original bank statements, and the bank statements were the best evidence of the deposits. Tex.R. Evid. 1002. We overrule this subissue for two reasons. First, the issue was not properly preserved. The **only** objection lodged by Esther concerning the $460,000 was to the testimony concerning the $105,-000 deposit. Because no objection was lodged with respect to the $140,000 and $215,000 deposits, Esther's sub-issue is waived. Tex.R.App. P. 33.1(a)(1)(A). Second, even had the issue been preserved, the best evidence rule applies only to prove the contents of an original writing. Socorro did not offer the bank statements into evidence. Instead she was attempting to elicit from Esther evidence the bank statements would not reveal—that the source of the deposits was Jose.

### (3) No Evidence the Transfers were a Fraud on the Community

 Esther contends there was no evidence the deposits made to her consti-

tuted a fraud on the community. We disagree. Socorro's cause of action for fraudulent transfer is based on the fiduciary relationship that exists between a husband and a wife as to the community property controlled by each spouse. *See Zieba v. Martin,* 928 S.W.2d 782, 789 (Tex.App.— Houston [14th Dist.] 1996, no writ); *In re Moore,* 890 S.W.2d 821, 827 (Tex.App.— Amarillo 1994, no writ). The breach of a legal or equitable duty which violates the fiduciary relationship existing between spouses is termed "fraud on the community," a judicially created concept based on the theory of constructive fraud. *In re Estate of Herring,* 970 S.W.2d 583, 586 (Tex.App.—Corpus Christi 1998, no pet.); *Zieba,* 928 S.W.2d at 789.

That Jose provided Esther the funds for the $140,000 and $215,000 deposits was not controverted. This money rightfully belonged to Jose and Socorro's community estate. The transfer of these monies by Jose to Esther constituted a fraud on the community.

The case of *Roberson v. Roberson,* 420 S.W.2d 495 (Tex.Civ.App.—Houston [14th Dist.] 1967, no writ), is directly on point. In *Roberson,* the parties were married in 1947. In early 1960, Dr. Roberson, the husband, filed for divorce, which was denied in June 1961. After the Texas court denied his divorce, Dr. Roberson went to Juarez, Mexico and obtained a Mexican divorce without Elsie Roberson's knowledge. He then married Marinelle Pullen in September 1961, and represented her to be his lawful wife. They lived together at least until July, 1964.

When Elsie learned of this purported marriage, she filed suit against Dr. Roberson for declaratory judgment to establish that the marriage to Marinelle was invalid and void. The trial court entered judgment on December 23, 1963, declaring that the Mexican divorce was void; that Marinelle's marriage was void and of no effect, and that Elsie was the lawful wife of Dr. Roberson.

Elsie then filed for divorce, which was granted. She was awarded, *inter alia,* $10,000 as a reimbursement for gifts made in fraud of her community interest; Dr. Roberson and Marinelle appealed. In affirming the reimbursement, the court of appeals held:

> Appellants lived together as husband and wife from September, 1961 until the date of trial, and in spite of a solemn judgment of the court declaring the marriage to be illegal and the Mexican divorce upon which appellants relied to be void, as well as inferences from the testimony that both parties knew, or should have known, of Dr. Roberson's valid marriage to Elsie Roberson, they have continued to live together as man and wife. Under the circumstances, the Mexican divorce can offer Dr. Roberson and Marinelle no solace. The property given to Marinelle consists of support for her and her children since at least 1961; numerous vacations and trips which she and her children took with appellant at his expense; a diamond ring costing about $800.00; for spending an undetermined amount of money monthly for Marinelle, for gasoline credit, clothing and numerous other items. This continued for a period of more than five years.... These expenditures were in cold disregard of the rights of Elsie Roberson in the community estate. This course of conduct and dealing was a clear and unequivocal fraud upon the lawful wife.

*Roberson,* 420 S.W.2d at 501. The court of appeals held the gifts by Dr. Roberson to Marinelle were knowingly excessive and capricious, and the trial court was justified in awarding appellee $10,000 for fraudulent gifts made out of the community property of the Robersons. *Id.* at 502.

In the present case, the facts are much more egregious. Jose and Esther carried on their relationship for more than twenty-three years, during which time Jose fathered three children by Esther. Jose gave Esther more than $164,000 as a down

payment on the Hidden View house, and made the monthly mortgage payment on the house for over seven years.[3] The evidence showed that in 1994 alone Jose gave to Esther at least $355,000, which was deposited into accounts in her name. As noted by the *Roberson* court:

It is so repugnant to our sense of justice that this court will never sanction the proposition that a husband may desert his lawful wife, and while living in adultery with another woman, donate to the latter as a gift his wife's interest in the property owned by them in common.…

*Roberson,* 420 S.W.2d at 502 (citing *Watson v. Harris,* 61 Tex.Civ.App. 263, 130 S.W. 237, 241 (1910)).

■■■■ Esther claims there is no evidence that she committed a fraud on the community. Again, we disagree. A third person who knowingly participates in the breach of a fiduciary duty may also be liable for that fraud. *Connell v. Connell,* 889 S.W.2d 534, 541 (Tex.App.—San Antonio 1994, writ denied). Esther testified she knew as early as 1984 that Jose was married, yet she continued to accept money and gifts from him after that date. Moreover, a conveyance or disposition of the community may be a legal fraud even though there is an absence of intent. *Hartman v. Crain,* 398 S.W.2d 387, 390 (Tex.Civ.App.—Houston 1966, no writ).

■■■■ Relying on *Carnes v. Meador,* 533 S.W.2d 365 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.), Esther also contends the court erred in entering a joint and several judgment against her because Socorro must first look to Jose to satisfy any judgment. In *Carnes,* the Dallas Court of Appeals held that if a spouse disposes of community property in fraud of the other spouse's rights, the aggrieved spouse has a right of recourse **first** against the property or estate of the disposing spouse; and, if that proves to be of no avail, **then** the aggrieved spouse may pursue the proceeds to the extent of her community interest

into the hands of the party to whom the funds have been conveyed. *Carnes,* 533 S.W.2d at 371; *see also In re Herring,* 970 S.W.2d at 587.

■■■■ Esther did not request findings of fact or conclusions of law. When findings of fact and conclusions of law are not properly requested and none are filed, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *In the Interest of W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984); *Saldana v. Saldana,* 791 S.W.2d 316, 319 (Tex.App.—Corpus Christi 1990, no writ). Esther presented no evidence to challenge the court's implied finding Jose would not be able to satisfy any judgment Socorro obtained against him. We find no error.

**(4) ESTHER SHOULD BE LIABLE FOR ONLY ONE-HALF OF THE AMOUNT OF THE TRANSFERS**

■■■■ Relying on *Jackson v. Smith,* 703 S.W.2d 791, 796 (Tex.App.—Dallas 1985, no writ), Esther contends she should only be liable for one-half of the transferred funds, *e.g.,* Socorro's one-half of the community. Esther confuses the division of a community estate in a probate action with the trial court's wide discretion to divide the marital estate upon divorce.

In *Jackson,* Sylvester Jackson purchased a $70,000 life insurance policy with community funds and named his sister, Betty Jackson, as the sole beneficiary. Eliza Smith, Jackson's common-law wife, claimed she was entitled to the proceeds, or at a minimum, one-half of the proceeds because Jackson had perpetrated a fraud on the community by designating his sister as beneficiary. The trial court agreed and awarded one-half of the policy proceeds to Eliza and one-half to Jackson's estate, less attorney's fees for the interpleaded insurance company.

The Dallas Court of Appeals reversed the one-half award to Jackson's estate and

**3.** These payments amounted to more than $149,200.

rendered judgment that Betty take these proceeds. The court held that where a surviving spouse establishes fraud on the community, that spouse may recover the one-half of the proceeds which represents that spouse's one-half interest in the community. The other one-half of the proceeds, representing the decedent spouse's community interest, is a gift to the designated beneficiary, and is unaffected by constructive fraud. *Jackson,* 703 S.W.2d at 796.

By contrast, in a divorce action, the entire community estate is "up for grabs," with the trial court empowered to make any division of the community property that is just and right, having due regard for the rights of each party. TEX. FAM. CODE ANN. § 7.001 (Vernon 1997). We find no merit to Esther's contention.

Issue number one is sustained with respect to the deposit of $105,000. In all other respects the issue is overruled.

In issue number two, Esther claims the trial court erred in awarding to Socorro the $26,400 held in the court's registry, the 1985 Mercedes Benz automobile, and the 1994 Dodge minivan because: (1) the property belonged to her; (2) Socorro had no claim to the property under a theory of constructive or resulting trust; and (3) with respect to the Hidden View house, Socorro's claim was barred by limitations and laches.

### (1) THE PROPERTY BELONGED TO ESTHER

The Mercedes Benz was purchased by Jose in 1985 for $12,500. Jose testified Esther purchased the vehicle from him in 1990 for $5,000. As the trier of fact, the trial court was not required to believe this testimony, *Hatteberg v. Hatteberg,* 933 S.W.2d 522, 530 (Tex.App.—Houston [1st Dist.] 1994, no writ), particularly in light of Esther's testimony that she did not have a job and had no independent means of support, and Jose's testimony that he still drives the car.

Esther claims the Hidden View house and the 1994 Dodge minivan were gifts to her and the minor children from Jose. Jose testified that he purchased the house and the minivan for Esther and his children. A spouse may make moderate gifts for just causes to persons outside the community. *Mazique v. Mazique,* 742 S.W.2d 805, 808 (Tex.App.—Houston [1st Dist.] 1987, no writ). But a gift of community funds that is capricious, excessive, or arbitrary may be set aside as a constructive fraud on the other spouse. *Horlock v. Horlock,* 533 S.W.2d 52, 55 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ dism'd w.o.j.).

The courts have long taken a dim view toward gifts by the husband to "strangers" of the marriage, "particularly of the female variety." *Fanning v. Fanning,* 828 S.W.2d 135, 148 (Tex.App.— Waco 1992), *aff'd. in part, rev'd in part on other grounds,* 847 S.W.2d 225 (Tex.1993); *Spruill v. Spruill,* 624 S.W.2d 694, 697 (Tex.App.—El Paso 1981, writ dism'd); *Watson,* 130 S.W. at 241. The same holds true for putative second wives when the first marriage remains undissolved. *Roberson,* 420 S.W.2d at 501–02; *Alexander v. Alexander,* 410 S.W.2d 275, 277 (Tex. Civ.App.—Houston 1966, no writ). Money spent on another woman out of community property during the marriage requires an accounting to the community. *Simpson v. Simpson,* 679 S.W.2d 39, 42 (Tex.App.— Dallas 1984, no writ). This type of gift or expenditure amounts to fraud upon the community estate. *Grossnickle v. Grossnickle,* 935 S.W.2d 830, 848 (Tex.App.— Texarkana 1996, writ denied).

Jose spent community property funds of $164,456.23 as the down payment on the Hidden View house, as well as $149,200 in mortgage payments, and $17,000 on the minivan. Because the money used to purchase these gifts was community property, the community estate was defrauded. Moreover, it was Jose's burden as the disposing spouse, or Esther's burden as the donee, to prove the gifts were not

210

capricious, excessive, or arbitrary. *Massey v. Massey*, 807 S.W.2d 391, 402 (Tex. App.—Houston [1st Dist.] 1991), *writ denied*, 867 S.W.2d 766 (Tex.1993); *Marshall v. Marshall*, 735 S.W.2d 587, 596 (Tex. App.—Dallas 1987, writ ref'd n.r.e.); *Horlock*, 533 S.W.2d at 55. No evidence was offered to meet this burden.

**(2) Constructive or Resulting Trust**

Socorro claims the property at issue was impressed with a resulting trust for the benefit of the community estate. We agree. A purchase money resulting trust is implied in law when someone, other than the person in whose name title is taken, pays the purchase price of the property. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984); *Amador v. Berrospe*, 961 S.W.2d 205, 207 (Tex.App.—Houston [1st Dist.] 1996, no writ). The parties who have paid the purchase money are equitable owners of the property, and the titleholder is a mere trustee who holds for the benefit of those that furnished the consideration. *Masterson v. Hogue*, 842 S.W.2d 696, 697 (Tex.App.—Tyler 1992, no writ); *see Somer v. Bogart*, 749 S.W.2d 202, 204 (Tex.App.—Dallas 1988), *writ denied, Bogart v. Somer*, 762 S.W.2d 577 (Tex.1988).

A resulting trust does not arise when the transferee is a wife, child, or other natural object of bounty of the person by whom the purchase price was paid. *Amador*, 961 S.W.2d at 207; Restatement (Second) of Trusts § 443 (1959). We thus consider whether the evidence established Esther was Jose's wife, or that Jose transferred the property to his children or a natural object of his bounty.

Despite Esther's statement that she has never been married, Jose testified he married Esther in 1983. Jose's testimony is supported by the record, which contains a Mexican "Act of Marriage" document certifying the August 19, 1983 marriage between Jose and Esther. We thus conclude that Esther and Jose were married in 1983.

The Texas Family Code provides that "a marriage is void if entered into when either party has an existing marriage to another person that has not been dissolved by legal action or terminated by the death of the other spouse." Tex. Fam.Code Ann. § 6.202(a) (Vernon Pamph. 1999). That Jose and Esther's marriage is legally void under Texas law because Jose's marriage to Socorro had not been dissolved, does not preclude Esther's right to recovery if she can prove a putative marriage to Jose. *See Davis v. Davis*, 521 S.W.2d 603, 606 (Tex.1975) (the effect of a putative marriage is to give the putative spouse who acted in good faith the same right in property acquired during the marital relationship as if he or she were a lawful spouse). A putative marriage is one that was entered into in good faith by at least one of the parties, but which is invalid by reason of an existing impediment on the part of one or both parties. *Garduno v. Garduno*, 760 S.W.2d 735, 738 (Tex. App.—Corpus Christi 1988, no writ); *Dean v. Goldwire*, 480 S.W.2d 494, 496 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.).

Jose testified that at the time of his marriage to Esther in 1983, Esther did not know he was married to Socorro. The testimony at this point is less than elucidating, but it appears that after the birth of their first child in 1984, Esther discovered Jose was married to Socorro. Thus, any putative marriage that may have existed, terminated when Esther learned of Jose's undissolved marriage. *Garduno*, 760 S.W.2d at 740. All of the property in issue was purchased after the time when any putative marriage between Jose and Esther had already terminated.

Esther attempts to avoid the imposition of a resulting trust by claiming the house and the minivan were gifts to the minor children. While Jose did testify that the house and the minivan were gifts to Esther and the minor children, the chil-

dren were not transferees of the property, nor was either piece of property titled in such a way as to implicate title in the minor children. Finally, we have found no authority, nor has appellant provided us with any authority holding a mistress or a lover is the natural object of a person's bounty. We overrule this contention.

### (3) Statute of Limitations/Laches

■ With respect to the Hidden View house, Esther claims the statute of limitations bars Socorro's recovery. While Esther properly pleaded this affirmative defense, Tex.R. Civ. P. 94, she has waived appellate review of her complaint because she did not request findings of fact or conclusions of law on the issue. *See Augusta Dev. Co. v. Fish Oil Well Serv. Inc.,* 761 S.W.2d 538, 542 (Tex.App.—Corpus Christi 1988, no writ) (a party asserting an affirmative defense in a trial before the court must request findings in support thereof in order to avoid waiver); *see also Hill v. Hill,* 971 S.W.2d 153, 156–57 (Tex. App.—Amarillo 1998, no pet. h.); *1st First Coppell Bank v. Smith,* 742 S.W.2d 454, 464–65 (Tex.App.—Dallas 1987, no writ); *Pinnacle Homes, Inc. v. R.C.L. Offshore Eng. Co.,* 640 S.W.2d 629, 630 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *contra Bowles v. Reed,* 913 S.W.2d 652, 657 (Tex.App.—Waco 1995, writ denied) (no waiver where appellants raised the limitations issue in an amended answer to the plaintiff's petition and "Motion For New Trial and to set Aside Judgment").

Issue number two is overruled.

### Disposition

The trial court awarded Socorro a $460,000 joint and several liability judgment against Esther and Jose. We sustained Esther's no evidence issue with respect to $105,000 of that judgment, necessitating a reformation of the judgment. As noted above, Jose is no longer a party to this appeal, and as such, he generally would not be entitled to any affirmative relief from this Court. However, in light of our no evidence holding, the joint and several judgment as to Jose must also be reformed. *See generally, Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 166 (Tex.1982) (reversal is required when the rights of appealing and nonappealing parties are so interwoven or dependent on each other as to require reversal of the whole judgment when a part thereof is reversed) (cited by *Belz v. Belz,* 667 S.W.2d 240, 244 (Tex.App.—Dallas 1984, writ ref'd n.r.e.)).

The trial court's judgment is REFORMED to reflect a joint and several liability judgment against Esther and Jose in the amount of $355,000. In all other respects the judgment is AFFIRMED.