

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00045-CV

DEBORAH KAY LOGSDON AND                                    APPELLANTS
MARK ALLEN LOGSDON

V.

MARK EDWARD LOGSDON                                          APPELLEE

----------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 233-510709-12

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an appeal from a final decree of divorce following a bench trial. The trial court made a disproportionate award of the community estate in favor of Appellee Mark Edward Logsdon (Husband) after finding that Appellant Deborah

---

[1]*See* Tex. R. App. P. 47.4.

Kay Logsdon (Wife) had committed actual fraud against the community estate by transferring and expending community funds to benefit herself and the couple's adult son, Appellant Mark Allen Logsdon (Son). In support of its judgment, the trial court made twenty-two findings of fact and twenty conclusions of law.[2]

Wife raises eight issues, complaining that the trial court erroneously included Son's property in the community estate, erroneously found that she had committed actual fraud on the community, erred in its disproportionate division of the community estate, failed to issue additional findings of fact, failed to award her child support, and erroneously awarded attorney's fees to Husband on her tort claims. Son raises three issues complaining that the trial court wrongly included property he owned in its division of Husband and Wife's community property.

Because we hold that Husband's settlement offer on Wife's tort claims did not comply with the procedures and time limits set forth in chapter 42 of the Texas Civil Practice and Remedies Code and Texas Rule of Civil Procedure 167,

---

[2]Although the trial court's findings and conclusions were issued outside the time period contemplated by the rules of civil procedure, we nonetheless consider them. *See Goldman v. Olmstead*, 414 S.W.3d 346, 359 (Tex. App.—Dallas 2013, pet. denied) (explaining rules do not preclude belated findings by trial court nor their consideration by appellate court); *Robles v. Robles*, 965 S.W.2d 605, 610 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (same); *see also Kramer v. Weir SPM*, No. 02-13-00093-CV, 2014 WL 3953928, at *2 (Tex. App.—Fort Worth Aug. 14, 2014, pet. denied) (mem. op.) (holding failure to timely file findings and conclusions harmless because appellant could not show late-filed findings and conclusions hampered his ability to request additional findings and conclusions or to properly present his appeal).

we will modify the trial court's judgment to delete the attorney's fees of $3,120 that were awarded to Husband in defending against Wife's tort claims, and we will affirm the judgment as modified.

## II. FACTUAL OVERVIEW[3]

Husband and Wife married in 1984. Son was born in 1989, and M.L. (Daughter) was born in 1996. Husband and Wife owned and operated a family business called Champion Sweeping, which performed parking lot, property, and building maintenance. Husband's duties included obtaining customers, performing the work, and maintaining the equipment. Wife handled the books for the company from 1984 or 1985 until August 2012. Through the years, Wife paid the family's personal expenses directly from the Champion Sweeping account.[4] Son helped out at Champion Sweeping from the time he was seven years old and worked there through college as the office manager.

Husband and Wife separated in September 2010, and Husband moved out of the family residence. On December 26, 2011, Husband admitted that he was having an affair, and in January 2012, Wife began depleting the Champion Sweeping account; she wrote backdated checks, cashed them, and transferred the money into accounts in her name and in Son's name. On February 4, 2012,

_____

[3]A more detailed factual discussion is set forth, as necessary, in connection with our discussion of the parties' issues below.

[4]When asked what personal expenses were paid through the Champion Sweeping account, Wife answered, "Everything."

3

Wife caught Husband with another woman, and six days later, Wife filed for divorce. Husband answered and filed a counterpetition for divorce.

Due to the parties' difficulties in continuing to jointly operate the business, Husband filed a motion for the appointment of a receiver, which the trial court granted. The receiver initially allowed Wife and Husband to attempt to run the business together, but when that became unworkable, the receiver took over running Champion Sweeping in September 2012. The receiver discovered and documented that on January 20, 2012, Wife had written backdated checks that she had made payable to herself, to Husband, and to Son and had negotiated all of the checks herself.

Husband later filed a motion for leave to add Son as a necessary third-party, claiming that through discovery, he had learned that large sums of money—which Husband believed constituted community property—were being held in Son's name and that Son had "borrowed the money" to buy two new vehicles. The trial court granted Husband's motion. Husband then amended his counterpetition for divorce to add claims against Son for fraud and civil conspiracy. Husband pleaded that Son was the record title holder and/or registered owner of certain property belonging to the community estate, including "a Jeep Wrangler, a Ford F[-]150 motor vehicle, and certain monetary funds" held in Son's name or in trust for Son. Husband's pleading sought a judgment against Wife and Son for actual and exemplary damages and requested the trial court to find that the assets listed were transferred to Son by commission of a fraud on

4

Husband's community interest in the assets, to set aside the transfers, to declare the assets to be community property, and to order Son to return any funds paid to him. Son filed a general denial.

Two weeks before the divorce trial commenced, Wife amended her petition to add causes of action for assault, intentional infliction of emotional distress, and breach of fiduciary duty by Husband. Husband attempted to settle these claims for $100 before trial, but Wife did not accept the settlement offer.

During trial, a court-appointed appraiser testified regarding the value of Champion Sweeping. The receiver testified regarding the alleged fraudulent transfers that Wife had made to herself and to Son. Wife and Husband testified regarding assets owned by the community estate, and each provided a proposed property division. Wife and Husband also testified regarding the possession and conservatorship of Daughter.

At the conclusion of Wife's case in chief and Husband's case in chief, Son stipulated that the sum of $119,706.67 that the receiver had recovered from Son's account was not Son's property but was community property to be considered in the division of his parents' community estate. Son then moved for a directed verdict as to the two claims Husband had pleaded against him—fraud and civil conspiracy—arguing that no evidence existed that he had participated with Wife in either a fraud or a civil conspiracy.[5] After hearing arguments from

---

[5]In his appellate brief, Son points out that his motion should have been labeled a motion for judgment, not a motion for directed verdict, because there

5

Son's attorney and Husband's attorney concerning the motion for directed verdict, the trial court ruled that although evidence existed of Son's involvement in the actual fraud perpetrated by Wife, no evidence existed of any independent damage to the community caused by Son. Accordingly, the trial court concluded that the damage to the community, if any, was a property-division consideration under *Schlueter*.[6] The trial court then granted Son's motion for directed verdict.

At the conclusion of the trial, the trial court granted the divorce and took all other issues under advisement. The trial court signed a final decree of divorce several months later, signed a corrected final decree from which Wife and Son appeal, and signed findings of fact and conclusions of law.

### III. STANDARDS OF REVIEW

Unless otherwise specified below, we apply an abuse-of-discretion standard of review to each of the issues raised, which implicate the trial court's decisions regarding property division, child support, and attorney's fees. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *see also Compass Bank v. Nacim*, 459 S.W.3d 95, 109 (Tex. App.—El Paso 2015, no pet.) (applying abuse-of-discretion standard to

---

was no jury. Because all references in the trial court and the parties' briefs refer to the motion as a motion for directed verdict, we will use that term for consistency.

[6]*Schlueter v. Schlueter*, 975 S.W.2d 584, 589–90 (Tex. 1998); *see also Chu v. Hong*, 249 S.W.3d 441, 445 (Tex. 2008) (reiterating that third party cannot be held liable in tort when community property is taken by one of the spouses).

6

whether trial court erred by not applying the offer-of-settlement rule found in Texas Rule of Civil Procedure 167 and chapter 42 of the Texas Civil Practice and Remedies Code). A trial court abuses its discretion if it acts without reference to any guiding rules or principles, that is, if the act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004).

In family-law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *Neyland v. Raymond*, 324 S.W.3d 646, 649 (Tex. App.—Fort Worth 2010, no pet.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. *Id.* The applicable sufficiency review comes into play with regard to the first question. *Id.*

The sufficiency standards of review we apply are the same for a trial court's findings of fact as for a jury's answers to questions in the court's charge; the findings are reviewable for legal and factual sufficiency of the evidence to support them. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin.*

7

*Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). Evidence is legally insufficient to support a trial court's finding of fact only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

## IV. SON'S APPEAL

Son argues in three issues that the trial court included property he owns in his parent's community estate and that the divorce decree's community-property division improperly divested him of his separate property.[7] Son did not testify. Wife testified that various items of personal property listed in Husband's proposed property division belonged to Son or were gifted to Son. But Husband controverted Wife's testimony and listed the assets Son claimed to own as community assets in his proposed property division that was admitted into evidence. Son moved for, and obtained, a directed verdict on Husband's claims against him; Son had a general denial on file but no pleading seeking affirmative relief or a declaration that certain assets belonged to him.[8] Because, prior to

---

[7]Son's three issues are as follows:

　　1. Did the trial court abuse its discretion by dividing property owned by [Son] after the trial court granted his motion for directed verdict?

　　2. Did the trial court abuse its discretion in divesting [Son] of his separate property in the divorce proceedings of his parents?

　　3. Was there any evidence presented at trial that the disputed property was community property of [Wife] and [Husband]?

[8]After the trial court signed the judgment, Son filed a first-amended motion to reconsider and to clarify, asserting that certain assets "were not proven to be community property subject to division in this case" and were assets of Son. But Son did not seek leave to file a post-trial pleading amendment seeking a declaration that the assets belonged to him. *See* Tex. R. Civ. P. 67 (providing for post-trial pleading amendment), 301 (providing that trial court's judgment shall conform to the pleadings); *In re S.A.A.*, 279 S.W.3d 853, 856 (Tex. App.—Dallas

entry of judgment, Son did not plead in the trial court for the relief he asks this court to grant him, we hold that he has waived his right to pursue such relief. *See, e.g.*, *Perl v. Patrizi*, 20 S.W.3d 76, 81–82 (Tex. App.—Texarkana 2000, pet. denied) (holding that defendant who had obtained directed verdict and had failed to pursue affirmatively pleaded counterclaims before jury was discharged waived them); *see also In re Russell*, 321 S.W.3d 846, 855 (Tex. App.—Fort Worth 2010, orig. proceeding) ("A trial court abuses its discretion by awarding relief to a person who has not requested such relief in a live pleading."); *Bean v. Massoud*, No. 05-08-00177-CV, 2009 WL 2385563, at \*2 (Tex. App.—Dallas Aug. 5, 2009, no pet.) (mem. op.) (holding that because daughter nonsuited her claims to her father's real property, she was not a party when trial court entered final divorce decree and lacked standing to appeal from final divorce decree). Having determined that Son waived his right to seek the relief requested in his three issues, we overrule them.

## V. WIFE'S CHALLENGE TO COMMUNITY-PROPERTY CHARACTERIZATION

In Wife's sixth issue, she challenges the trial court's community-property characterization of the items that Son claims to own, which are as follows: the funds remaining in BBVA/Compass account 6825, a 1967 Ford Mustang, a 2011 Ford F-150, a 2011 Jeep Wrangler, a 2012 Dragmaster trailer, and some government series EE bonds in Son's and Wife's names. Although evidence

---

2009, no pet.) (holding trial court's jurisdiction to render judgment is invoked by pleadings, and a judgment unsupported by pleadings is void).

exists that these assets were acquired during the marriage with funds from Champion Sweeping or other community assets, thus triggering the community-property presumption, Wife claims that these assets belong to Son; in conclusion of law 15, the trial court characterized them as community assets.

In dividing property in a divorce action, the trial court must confine itself to the community property of the parties. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985); *see generally* Tex. Fam. Code Ann. § 7.001 (West 2006) (requiring trial court to divide "estate of the parties"); *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) (stating that phrase "estate of the parties" encompasses community property of a marriage but not separate property). Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 2006); *Pearson*, 332 S.W.3d at 363. A party seeking to rebut the presumption that property possessed by either spouse during the marriage is community property must do so by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b). Any doubt as to the character of property should be resolved in favor of the community estate. *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.).

The evidence at trial documented Wife's use of Champion Sweeping funds during the marriage to pay for Son's college (the remaining balance of which was in BBVA/Compass account 6825), the series EE bonds in Son's and Wife's names, the 2011 Jeep Wrangler, the 2011 Ford F-150, the 1967 Ford Mustang,

11

and the 2012 Dragmaster trailer. Husband denied that these assets were gifts to Son and testified that he did not know of or consent to Wife's use of Champion Sweeping funds for these purposes. Wife offered no evidence showing that these assets were not acquired during the marriage or that the assets were acquired utilizing Wife's or son's separate property. Thus, the community-property presumption applied to these assets. *See* Tex. Fam. Code Ann. § 3.002 (West 2006), § 3.003(a), (b); *Pearson*, 332 S.W.3d at 363; *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001) (applying community-property presumption in the absence of evidence that asset was separate property when purchased); *Boyd*, 131 S.W.3d at 612; *see also Osuna v. Quintana*, 993 S.W.2d 201, 205, 209 (Tex. App.—Corpus Christi 1999, no pet.) (applying community-property presumption to monies mistress admitted were deposited into her account by husband). The trial court specifically found that Wife did not meet her burden to rebut by clear and convincing evidence the presumption that the funds remaining in BBVA/Compass account 6825, the 1967 Ford Mustang, the 2011 Ford F-150, the 2011 Jeep Wrangler, the 2012 Dragmaster trailer, and the government series EE bonds in Son's and Wife's names were community property. Accordingly, we hold that the trial court did not abuse its discretion in conclusion of law 15 by characterizing these assets as part of the community estate.[9] *See Barnett*, 67

---

[9]The trial court also expressly found that the separate property claims of Wife and Son concerning these assets "were not proven by clear and convincing evidence."

12

S.W.3d at 111; *Boyd*, 131 S.W.3d at 612; *see also Osuna*, 993 S.W.2d at 205, 209. We overrule Wife's sixth issue.[10]

## VI. FRAUD ON THE COMMUNITY

In her third issue, Wife argues that no evidence exists to support the trial court's finding number 16 that she committed actual fraud on the community by transferring property from the community estate and by expending community funds to benefit herself and Son.

The relationship between a husband and wife is a fiduciary relationship, and the spouses are bound by the fiduciary relationship in dealing with the community estate. *See Vickery v. Vickery*, 999 S.W.2d 342, 357 (Tex. 1999) (Hecht, J., dissenting) (dissenting to the Texas Supreme Court's denial of petition of review); *Sw. Tex. Pathology Assocs., L.L.P. v. Roosth*, 27 S.W.3d 204, 208 (Tex. App.—San Antonio 2000, pet. dism'd w.o.j.). Although a spouse has the right to dispose of community property under her control, a presumption of constructive fraud arises when one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *Mazique*, 742 S.W.2d at 807–08. Actual fraud on the community arises when

---

[10]To the extent Wife claims these assets or monies were gifts to Son, Husband testified that the expenditures were made without his knowledge and consent, thereby shifting the burden to Wife to show fairness in disposing of Husband's interest in these community assets or monies. S*ee, e.g.*, *Mazique v. Mazique*, 742 S.W.2d 805, 807–08 (Tex. App.—Houston [1st Dist.] 1987, no writ). Wife failed, at trial and on appeal, to address or allege that her use of community funds to purchase these assets or to make these transfers to Son was fair to Husband's interest in the community estate.

13

such a transfer is made with "dishonesty of purpose or intent to deceive." *See Schlueter*, 975 S.W.2d at 589–90; *Wright v. Wright*, 280 S.W.3d 901, 908–09 (Tex. App.—Eastland 2009, no pet.) (explaining that "[a] spouse commits actual fraud if he or she transfers community property . . . for the primary purpose of depriving the other spouse of the use and enjoyment of the assets involved in the transaction").

The trial court made the following finding of fact concerning Wife's actual fraud on the community:

> 16. The Court finds that DEBORAH KAY LOGSDON committed actual fraud against the community estate of the parties by the transfer of community property and expenditure of community funds to and for the benefit of DEBORAH KAY LOGSDON and MARK ALLEN LOGSDON with intentional dishonesty and the intent to deceive MARK EDWARD LOGSDON.

Generally, the evidence presented at trial supporting this finding showed that Wife had created and cashed backdated "payroll" checks made payable to herself, Son, and Husband written on the Champion Sweeping account; that she had transferred approximately $280,000 from the couple's joint accounts into accounts in Son's name; that she had removed money from the couple's E*Trade account; and that she had paid approximately $130,000 from community funds to her mother in Indiana.

Detailing this evidence more specifically, it established that Champion Sweeping had never issued Husband a paycheck until March 2012, when the trial court ordered that Husband should receive paychecks. Nonetheless,

14

Husband discovered payroll checks made payable to him; he had not cashed them, but they had been negotiated without his signature and deposited into an account that he did not have access to. The receiver compiled a chart listing checks from the Champion Sweeping account that were made payable to Husband, that he did not receive, and that were all negotiated on January 20, 2012; those checks were backdated from October 2011 through January 2012, were not written in numerical order,[11] and totaled $26,187.20.[12] The receiver testified that during his review of all the banking records, he was unable to find anything that would reflect the deposit of those funds into an account operated by Husband. Additionally, the receiver compiled a chart listing the checks from the Champion Sweeping account that were made payable to Wife and that were negotiated by Wife on January 20, 2012; the chart reflects that the checks were backdated from May 2010 through January 2012, that the checks were not written in numerical order, and that the checks totaled $23,699.35. The receiver also compiled a chart listing the checks from the Champion Sweeping account

[11]For example, check number 29341 was dated January 9, 2012, while check number 31108 was dated November 7, 2011.

[12]One of the individual checks Wife wrote on the Champion Sweeping account and made payable to Husband was a check for $17,838 for the December 25 through 31 pay period in 2011. Wife admitted, however, that Husband did not endorse or deposit the check even though it was negotiated during January 2012.

that were made payable to Son and negotiated on January 20, 2012;[13] those checks were backdated from May 2010 through January 2012, were not written in numerical order, and totaled $6,397.30.

In June 2012, after suit was filed and shortly before the receiver was appointed, Wife again cashed checks from Champion Sweeping made payable to herself totaling $24,065.10;[14] to Son totaling $9,848.17; and to Husband totaling $6,077.35.[15] Similar to previous checks written on the Champion Sweeping account, the checks were not written in numerical order and were notated as covering payroll for periods dating back to May 2010.

Wife withdrew $126,000 from an account that she held jointly with Husband and transferred the money into an account for Son. Wife explained that she put aside this $126,000 for college for Daughter and asked Son to make sure that Daughter went to college in the event that something happened to Wife. Wife also withdrew $150,000 from an account that she held jointly with Husband and transferred the money into an account held in her name as trustee for Son. Wife did not deny making the transfers, nor did she testify that she had consulted with Husband prior to making them.

---

[13]These checks were not signed by Son but were marked "For Deposit Only."

[14]Of the individual checks payable to Wife, she received a check totaling $20,980.50 for the December 25 through 31 pay period in 2011; however, the receiver said that he was not aware of any Christmas bonuses being paid.

[15]Husband received $1,887.75 of this amount.

16

The receiver testified that at the very beginning of the receivership, Wife withdrew $13,000 from an E*TRADE account held by the receiver and deposited it into a Compass Bank account ending in 2580. The receiver said that Wife admitted that she had taken money out of the E*Trade account and that she had deposited the funds into her bank account because she had no access to any money. The receiver asked Wife to repay the $13,000 to him so that he could replenish the E*TRADE account, but Wife refused. The receiver said that he had requested that the E*TRADE account be frozen so that no one else could have access to it.

Husband testified that from January 2009 through March 2013 Wife had written monthly checks on the Champion Sweeping account totaling approximately $130,000 to Wife's mother in Indiana. Husband said that Wife told him they were purchasing land in Indiana from Wife's mother. In fact, the couple gained no ownership interest in the property. Wife testified at trial that the payments were to "rent" the land from her mother and that Wife had one vehicle stored on the land.[16]

---

[16]As the finder of fact and the sole judge of the credibility of the witnesses and the weight to be given their testimony, the trial court was entitled to believe Husband's testimony and to conclude that Wife's payments to her mother constituted actual fraud on the community. *See Strong v. Strong*, 350 S.W.3d 759, 771 (Tex. App.—Dallas 2011, pet. denied) (recognizing that when evidence on issue of whether transfer was made without non-transferring spouse's consent is disputed, trial court's resolution of the issue will not be disturbed).

Considering the evidence favorable to the trial court's actual fraud finding and disregarding the contrary evidence because a reasonable factfinder could, we hold that the evidence is legally sufficient to support the trial court's finding that Wife committed actual fraud on the community by transferring community property and by expending community funds to and for the benefit of herself and Son with intentional dishonesty and with the intent to deceive Husband. *See Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–51 (Tex. 1996); *Wright*, 280 S.W.3d at 909–12 (holding husband's actual fraud established by evidence that without wife's knowledge or consent, he drained bank accounts, transferred title to motorcycles to sons, and transferred stock to third party days after wife filed suit for divorce). Considering and weighing all of the evidence in the record pertinent to the trial court's actual fraud finding, the credible evidence is not so weak nor the contrary evidence so overwhelming that the finding should be set aside. Accordingly, we hold that the evidence is factually sufficient to support the trial court's finding that Wife committed actual fraud on the community. Because legally and factually sufficient evidence exists supporting the trial court's actual fraud finding against Wife, the trial court did not abuse its discretion in making the finding. We overrule Wife's third issue.[17]

---

[17]To the extent Wife argues on appeal that "as long as property is recovered by the community estate after a transfer, then a <u>fraudulent</u> transfer never occurred[,]" we cannot agree. *See, e.g.*, *Schlueter*, 975 S.W.2d at 590 (holding Mr. Schlueter committed actual fraud on the community—which could be considered in property division—by transferring community assets to his father even though community was made whole by money judgment against Mr.

18

## VII. RECONSTITUTED ESTATE

In her fourth issue, Wife argues that if there was a fraudulent transfer, the trial court should have reconstituted the estate and then divided the property equitably. *See* Tex. Fam. Code Ann. § 7.009 (West Supp. 2015).

Concerning the "reconstituted estate," the receiver testified that he "couldn't determine if there is [money that someone had siphoned from the community estate and was holding against the receivership order], if there's other money out there that's hidden, not placed in bank accounts, or anything like that." The receiver said that he could testify with certainty only that he had control over Wife's accounts "[a]s far as [he] kn[e]w." The record thus demonstrates, and Wife agrees, that the trial court had before it a proposed property division from each of the parties—both of which included the funds and items that the receiver had been able to recoup. Testimony and evidence also existed concerning the approximately $130,000 Wife had paid to her mother and the exact dollar amount of depletion of the community funds transferred by wife that had occurred from the time the transfers occurred until the time the receiver tracked down the funds and took control of them. In making the property division, the trial court therefore had before it the reconstituted estate—the total value of the community estate that existed if Wife's actual fraud on the community had not occurred. *See id.* § 7.009(a) (defining "reconstituted estate").

---

Schlueter's father and in favor of community estate in amount of asset fraudulently transferred).

19

Wife argues that after reconstituting the estate, the trial court should then have divided it "equitably." However, Wife interprets the term "equitably" to mean equally. In the examples set forth in her brief, Wife proposes that the reconstituted estate be divided in half. The statute, however, does not require the trial court to divide the reconstituted estate equally between the parties but instead instructs the trial court to "divide the value of the reconstituted estate between the parties in a manner the court deems just and right." *See id.* § 7.009(b)(2); *see also Murff*, 615 S.W.2d at 699 (reiterating that community property need not be equally divided). In making a just-and-right division of the reconstituted estate, the statute specifically provides that the trial court may grant any legal or equitable relief necessary to accomplish a just-and-right division, including awarding to the wronged spouse an appropriate share of the community estate. *See* Tex. Fam. Code Ann. § 7.009(c)(1).

Because the record reflects that the trial court did reconstitute the estate and because the trial court was authorized under family code section 7.009(c)(1) to make a disproportionate property division of the reconstituted estate, we overrule Wife's fourth issue complaining that the estate was not reconstituted and that an equal division of the reconstituted estate is required. *See id.*; *Schlueter*, 975 S.W.2d at 590; *Everitt v. Everitt*, No. 01-11-00031-CV, 2012 WL 3776343, at *6–7 (Tex. App.—Houston [1st Dist.] Aug. 31, 2012, no pet.) (mem. op.).

## VIII. DIVISION OF THE COMMUNITY ESTATE[18]

In her first and second issues, Wife argues that the trial court abused its discretion by making a disproportionate property division because there is no evidence to support the disproportionate division. Wife argues that "[l]eaving aside the alleged fraud on the community, all of the factors favor the wife" and argues in her reply brief that "[u]nless the husband can offer evidence of fraud-against-the-community, the disproportionate property division must be set aside as an abuse of discretion."

Community property does not have to be divided equally. *Murff*, 615 S.W.2d at 699. When exercising its broad discretion in dividing the community estate, "[w]aste, fraudulent transfer[s], or other damage to community property are claims belonging to the community itself, so they must be included in the trial court's just-and-right division of community property upon divorce." *Chu*, 249 S.W.3d at 444–45; *see also Schlueter*, 975 S.W.2d at 589–90. The trial court may additionally consider other factors, including the nature of the property; the relative earning capacity and business opportunities of the parties; the parties' relative financial conditions and obligations; the parties' educations; the size of the separate estates; the age, health, and physical conditions of the parties; fault

---

[18]Wife asserts numerous and detailed arguments challenging various aspects of the trial court's disproportionate property division favoring Husband. Because these arguments form the crux of Wife's appeal, we address each of them even though they present sometimes overlapping, partially redundant, and alternative contentions.

in breaking up the marriage; the benefit the innocent spouse would have received had the marriage continued; and the probable need for future support. *See Murff*, 615 S.W.2d at 699; *In re Marriage of C.A.S.,* 405 S.W.3d 373, 384 (Tex. App.—Dallas 2013, no pet.). A disproportionate division must be supported by some reasonable basis. *Smith v. Smith*, 143 S.W.3d 206, 214 (Tex. App.—Waco 2004, no pet.). The party complaining of the division of the community estate has the burden of showing from the evidence in the record that the trial court's division of the community estate was so unjust and unfair as to constitute an abuse of discretion. *C.A.S.*, 405 S.W.3d at 384.

We have already held that the trial court's finding that Wife committed actual fraud against the community is supported by the evidence and did not constitute an abuse of discretion. And because Husband proved Wife's actual fraud on the community, the trial court rightly considered Wife's fraud as a factor in making a disproportionate property division. *See Chu*, 249 S.W.3d at 444–45; *Schlueter*, 975 S.W.2d at 590.

Examining other factors the trial court may consider in making a just-and-right division of the community estate, the evidence established that Husband and Wife were married in September 1984. They founded Champion Sweeping shortly thereafter, in 1984 or 1985. Both Husband and Wife worked exclusively at Champion Sweeping throughout their almost thirty-year marriage. As a result, Husband's and Wife's financial conditions and obligations (both tied to Champion Sweeping) are comparable. Likewise, their earning capacity based on both

22

Husband's and Wife's almost thirty years of employment with Champion Sweeping appears comparable. Wife served as Champion Sweeping's bookkeeper while Husband worked in the day-to-day cleaning operations and maintained the equipment. Husband graduated from high school and obtained one year of a college education. Wife graduated from high school but did not attend college. Wife had some prior "office work" job experience. Although Wife claimed she was no longer healthy enough to work, the trial court, as the judge of the credibility of the witnesses, was free to disbelieve her and apparently did disbelieve her. Wife's actual fraud on the community required the receiver to engage in efforts to track down the fraudulently transferred assets and monies, causing the community to incur fees for this work by the receiver. And finally, Wife's payment of almost $130,000 to her mother to "rent" land in Indiana is also a fact the trial court was entitled to consider in its just-and-right property division. While the trial court granted the divorce partially on the ground of adultery by Husband "committed more than one year after separation of the parties," no requirement exists that this factor result in a disproportionate property division in favor of Wife. *See Murff*, 615 S.W.2d at 698.

Based on the evidence presented to the trial court relevant to a just-and-right property division, we hold that the evidence is both legally and factually sufficient to support the trial court's decision to make a disproportionate award of

the community estate to Husband.[19] *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450–51; *Dailey v. Dailey*, No. 02-12-00097-CV, 2013 WL 105667, at *5 (Tex. App.—Fort Worth Jan. 10, 2013, no pet.) (mem. op.) (holding that evidence at trial supported implied finding of fraud and provided a legal basis for the alleged disproportionate award to wife of the community estate). We therefore hold that the trial court did not abuse its discretion in making a disproportionate award of the community estate, and we overrule Wife's second issue.

We next turn to Wife's arguments that the trial court nonetheless exercised its discretion unreasonably in arriving at the *amount* or *percentages* of the disproportionate property division based on the above facts. Husband and Wife both prepared inventories assessing the value of the community property; the trial court's property division used the valuation figures proposed by Husband.[20]

---

[19]Wife also points to Husband's alleged abuse as a factor favoring her in the property division. But the trial court expressly found that Wife's tort claims against Husband were not established by the evidence.

[20]To the extent that Wife asserts that Husband's proposed property division and inventory constitutes "no evidence" of value because it was admitted only as a property division, we reject this contention. Husband's inventory was admitted for all purposes, without objection or a request that its consideration be limited. *See, e.g.*, Tex. R. Evid. 105(a); *Cigna Ins. Co. v. Evans*, 847 S.W.2d 417, 421 (Tex. App.—Texarkana 1993, no writ) ("Evidence admitted without limitation comes into evidence for any and all purposes."). To the extent Wife asserts that Husband's proposed property division and inventory constitutes "no evidence" of value because it is not sworn, we note that Wife's trial attorney questioned Husband almost line by line about the contents of Husband's proposed property division so that Husband provided sworn testimony on its contents. *See, e.g.*, *Means v. Means*, 535 S.W.2d 911, 915–16 (Tex. App.— Amarillo 1976, no writ) (holding trial court did not err by permitting husband to submit amended inventory and appraisement after both parties rested and closed

24

Utilizing Husband's valuation figures, the property division favors Husband 57.7% to Wife's 42.3%; the same property division using Wife's valuation figures favors Husband 61.9% to 38.1%. Wife argues that the trial court should have effected an exact fifty/fifty division or given her a greater share of the community estate because the community estate contained approximately $1.4 million in cash; the disproportionate division constitutes a $575,000 penalty against her and is excessive in light of what she characterizes as only an alleged $13,000 fraudulent transfer; each type of property should have been divided equally; and the trial court erroneously included Son's property in the community estate.

We cannot agree with any of these arguments by Wife. A trial court's failure to effectuate a fifty/fifty property division is not automatically an abuse of discretion. *See* Tex. Fam. Code Ann. § 7.001 (requiring trial court to order a just and right, not an equal, division of the community estate); *Murff*, 615 S.W.2d at 700. The cash component of the community estate does not somehow mandate a different or more equal percentage division of the community estate. A trial court's consideration of a spouse's actual fraud on the community is not restricted to a dollar-for-dollar credit for only unrecouped assets or monies; actual fraud on the community is a factor the trial court may consider in its just-and-right division of the community property regardless of whether the community estate

---

in absence of objection by wife); *see also Warriner v. Warriner*, 394 S.W.3d 240, 248 (Tex. App.—El Paso 2012, no pet.) (recognizing sworn inventory is simply another form of testimony).

has been made whole by the return of the community assets or monies transferred by a spouse in committing actual fraud on the community. *See, e.g.*, *Schlueter*, 975 S.W.2d at 590. Like types of property in the community estate need not be divided equally between the spouses. *See* Tex. Fam. Code Ann. § 7.001. And the trial court found that the property Wife asserts belonged to Son was, in fact, part of the community estate and that Wife and Son had failed to establish its separate character by clear and convincing evidence.

For these reasons and based on this record, Wife has failed to meet her burden to show that the percentage amounts of the trial court's disproportionate division of the community estate were so unjust and unfair as to constitute an abuse of discretion. *See Lucy v. Lucy*, 162 S.W.3d 770, 777–78 (Tex. App.—El Paso 2005, no pet.) (upholding disproportionate award of community estate 55% to 45% in favor of wife based on implied finding of husband's actual fraud on the community and despite "equalizing" money judgment for estate based on fraudulent transfer); *Loaiza v. Loaiza*, 130 S.W.3d 894, 902–03 (Tex. App.—Fort Worth 2004, no pet.) (upholding disproportionate award of community estate 77% to 33% in favor of wife based on husband's constructive fraud on the community); *see also Garcia v. Garcia*, No. 02-11-00276-CV, 2012 WL 3115763, at *9 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (mem. op.) (upholding disproportionate award of community estate 68% to 32% in favor of wife based on multiple factors including husband's fraud on the community). We hold that whether the trial court divided the community estate 57.6% to 42.4% in favor of

26

Husband—as Husband alleges, or 61.9% to 38.1% in favor of Husband—as Wife alleges, Wife has not established that based on the evidence either division is so unjust or unfair as to constitute an abuse of discretion. We overrule Wife's first issue.

## IX. ADDITIONAL FINDINGS

In her fifth issue, Wife argues that this appeal must be abated because the trial court failed to make additional findings of fact. Wife contends that under Texas Family Code section 6.711, the trial court was required to make findings as to the value of the community estate's assets on which disputed evidence was presented.[21] But Wife did not request additional findings under family code section 6.711. Instead, Wife timely requested initial findings of fact and conclusions of law under Texas Rule of Civil Procedure 296 and requested

---

[21]Texas Family Code section 6.711 states that in a suit for dissolution of a marriage in which the trial court has rendered a judgment dividing the estate of the parties,

> on request by a party, the court shall state in writing its findings of fact and conclusions of law concerning:

> (1) the characterization of each party's assets, liabilities, claims, and offsets on which disputed evidence has been presented; and

> (2) the value or amount of the community estate's assets, liabilities, claims, and offsets on which disputed evidence has been presented.

> (b) A request for findings of fact and conclusions of law under this section must conform to the Texas Rules of Civil Procedure.

Tex. Fam. Code Ann. § 6.711(a)–(b) (West 2006).

additional findings of fact and conclusions of law under Texas Family Code section 7.009, specifically requesting findings of fact as to (1) the value by which the community estate was depleted as a result of the fraud on the community and (2) the value of the reconstituted estate. The trial court did not make any additional findings.

While the trial court's duty to make findings requested under section 6.711 is mandatory, a party's request for findings of fact under rule 296 does not preserve the party's right to findings under section 6.711. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (recognizing trial court's mandatory duty to make findings under family code section 6.711); *Moore v. Moore*, 383 S.W.3d 190, 200–01 (Tex. App.—Dallas 2012, pet. denied) (holding initial request for fact findings solely pursuant to rule 296 waived right to section 6.711 findings requested after the expiration of time for initial request for fact findings); *cf. In re D.C.*, No. 05-12-01574-CV, 2014 WL 1887611, at *6 (Tex. App.—Dallas May 9, 2014, no pet.) (mem. op.) (holding request for fact findings pursuant to rule 296 did not preserve right to findings under family code section 153.258). Because Wife initially requested findings under rule 296, did not request findings under section 6.711, and requested additional findings under family code section 7.009, we hold that Wife waived her right to section 6.711 findings. *See Moore*, 383 S.W.3d at 200–01.

To the extent that Wife argues in her reply brief that she was entitled to the additional findings that she did request under family code section 7.009, she has

28

not shown that the trial court's failure to issue additional findings under section 7.009 prevented her from adequately presenting her complaint on appeal. Wife's and Husband's inventories show their valuations of the items in the community estate. We have held that the trial court did not abuse its discretion regardless of which party's valuations it used. If the record shows that the complaining party did not suffer injury, the failure to make additional findings of fact does not require reversal. *See, e.g.*, Tex. R. App. P. 44.1(a); *Villarreal v. Guerra*, 446 S.W.3d 404, 414 (Tex. App.—San Antonio 2014, pet. denied) (explaining that to obtain reversal for trial court's failure to make additional findings of fact, appellant must show that such failure prevented adequate presentation of appellant's case on appeal in that she was forced to guess the reasons for the trial court's decision); *Honeywell Int'l, Inc. v. Denton Cent. Appraisal Dist.*, 441 S.W.3d 495, 507 (Tex. App.—El Paso 2014, pet. denied) (same); *H.K. Global Trading, Ltd. v. Combs*, 429 S.W.3d 132, 141 (Tex. App.—Austin 2014, pet. denied) (same); *Tamez v. Tamez*, 822 S.W.2d 688, 692–93 (Tex. App.—Corpus Christi 1991, writ denied) (generally same). Accordingly, because Wife has not explained, and we cannot discern, how she was harmed by the trial court's failure to make the additional findings of fact that she requested under section 7.009, even if such failure constituted error, reversal is not required. *See, e.g.*, Tex. R. App. P. 44.1(a); *Villarreal*, 446 S.W.3d at 414. We overrule Wife's fifth issue.

29

## X. CHILD SUPPORT

In her seventh issue, Wife argues that the trial court abused its discretion by not awarding her child support for Daughter. The trial court made the following findings of fact pertinent to the trial court's decision not to award Wife child support:

> 7. There is one child, [Daughter], aged 17.
>
> 8. The Court finds that the child, [Daughter], has been completely alienated from her Father, MARK EDWARD LOGSDON, and is only marginally supervised by her Mother, DEBORAH KAY LOGSDON.
>
> 9. The Court finds that based on [Daughter]'s age, conduct, lack of supervision, and lack of meaningful discipline[,] she is *de facto* emancipated.
>
> 10. There is another child of the marriage, MARK ALLEN LOGSDON, over the age of 18, who was a Third[-]Party Respondent to this suit.

The trial court also made the following conclusions of law pertinent to its decision to not award Wife child support:

> 6. The parents should be named Joint Managing Conservators sharing the rights of parents as set out in Texas Family Code § 153.073 with each having the non-exclusive right to establish the residence and domicile of the child.
>
> 7. Each parent should be obligated to pay one[-]half of the costs of the child's medical care and to support the child during [his or her] respective periods of possession which should be scheduled by the agreement of the parties and the child.

A trial court has authority to require one joint managing conservator to pay child support to another joint managing conservator. *See* Tex. Fam. Code. Ann.

30

§ 153.138 (West 2014) ("The appointment of joint managing conservators does not impair or limit the authority of the court to order a joint managing conservator to pay child support to another joint managing conservator."). The amount of a periodic child support payment established by the child-support guidelines is presumed to be reasonable, and an order of support conforming to the guidelines is presumed to be in the best interest of the child. *Id.* § 154.122(a) (West 2014).

A court, however, may determine that the application of the guidelines would be unjust or inappropriate under the circumstances. *Id.* § 154.122(b). In determining whether application of the guidelines would be unjust or inappropriate under the circumstances, the trial court shall consider evidence of all relevant factors, including, among other factors, the age and needs of the child; the ability of the parents to contribute to the support of the child; any financial resources available for the support of the child; the amount of time of possession of and access to a child; and any other reason consistent with the best interest of the child, taking into consideration the circumstances of the parents. *Id.* § 154.123(b) (West 2014).

The evidence established that Daughter had missed 230 days of school the year prior to the trial while living with Wife and that Daughter had accumulated 250 days of absences the year prior to that. Husband was alarmed at Daughter's truancy and said that she had a 28 average in chemistry when the trial court ultimately ordered Husband to take Daughter to and from school.

Husband said that once he started taking Daughter to school, she missed zero days of school, was tardy only three times, and made the A Honor Roll.

Husband testified that during the pendency of the divorce, he had tried on multiple occasions to see his daughter, but every time, he was "stonewalled either by the child directly or with an accomplice of her mother." Husband said that the only time he had access to Daughter was during the prior school year when he was ordered to take her to and from school. Husband believed that Daughter was alienated from him but asked to keep his visitation rights in place, and Wife said that she believed it is important for Daughter to have a relationship with Husband.

Daughter was scheduled to graduate from high school in December 2013, which was two months after the divorce trial.[22] Wife said that her residence would remain in Tarrant County until Daughter graduated from high school. Husband testified that he wanted Daughter to attend school and to excel, that he had put aside money for Daughter to attend college, and that he wanted her to have the opportunity to "better herself."

On this record, we hold that the evidence is both legally and factually sufficient to support the trial court's fact findings that Daughter is alienated from Husband and only marginally supervised by Wife and that based on Daughter's

---

[22]Thus, at the time the trial court signed the corrected final decree of divorce on February 3, 2014, it is possible that Daughter had already graduated from high school.

age, conduct, lack of supervision, and lack of meaningful discipline, she is de facto emancipated. *See Cont'l Coffee Prods. Co.*, 937 S.W.2d at 450–51 (legal sufficiency); *Pool*, 715 S.W.2d at 635 (factual sufficiency). Moreover, after reviewing the record, we hold that the trial court did not abuse its discretion by determining that application of the child-support guidelines would be unjust or inappropriate under these circumstances or by concluding that Wife and Husband should each pay half of Daughter's medical care and were each responsible for Daughter's support during their respective periods of possession. *See* Tex. Fam. Code Ann. § 154.122(b); *In re K.L.D.*, No. 12-10-00386-CV, 2012 WL 2127464, at *6 (Tex. App.—Tyler June 13, 2012, no pet.) (mem. op.) (finding no abuse of discretion in failing to require either parent to pay child support because they shared joint, equal possession); *Dennis v. Smith*, 962 S.W.2d 67, 72 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (finding no abuse of discretion in failing to require parents to pay child support when, among other factors, they shared joint managing conservatorship); *cf. Warner v. Warner*, 615 S.W.2d 904, 906–07 (Tex. Civ. App.—Fort Worth 1981, no writ) (holding evidence supported finding that eighteen-year-old son was emancipated when he moved to start work on a six-year medical degree). We overrule Wife's seventh issue.

## XI.  ATTORNEY'S FEES FOR WIFE'S TORT CLAIMS

In her eighth issue, Wife argues that there is no evidence to support the trial court's award of $3,120 in attorney's fees to Husband under rule 167. Two

weeks before the divorce trial commenced, Wife amended her petition to add causes of action for assault, intentional infliction of emotional distress, and breach of fiduciary duty. Four days later, Husband faxed an offer of settlement on Wife's newly-added tort claims to Wife's attorney; the settlement offer stated that it was made pursuant to chapter 42 of the Texas Civil Practice and Remedies Code, offered Wife $100 in exchange for her agreement to dismiss the tort claims, and set a deadline for accepting the settlement offer at 5:00 p.m. that same day. Wife did not accept the offer of settlement.

Texas Rule of Civil Procedure 167 and section 42.004 of the Texas Civil Practice and Remedies Code provide for the award of litigation costs, including reasonable attorney's fees, under certain circumstances when a settlement offer is rejected.[23] *See* Tex. Civ. Prac. & Rem. Code Ann. § 42.004(a) (West 2015); Tex. R. Civ. P. 167.1.[24] Litigation costs are not recoverable, however, absent compliance with the specific procedures set forth in the rule and in the statute. Tex. Civ. Prac. & Rem. Code Ann. § 42.002(c); Tex. R. Civ. P. 167.2(a), (e)

---

[23]Husband sought, and the trial court awarded, attorney's fees only in connection with Wife's tort claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 42.002(a), (b) (West 2015) (stating these procedures apply only to claims for monetary damages and do not apply to an action brought under the family code); Tex. R. Civ. P. 167.1(d), 167.2(d) (same).

[24]Section 42.005 of the Texas Civil Practice and Remedies Code states that the Texas Supreme Court "shall promulgate rules implementing this chapter" and that the rules promulgated by the Texas Supreme Court must provide the deadlines and procedures involved. *See* Tex. Civ. Prac. & Rem. Code Ann. § 42.005(a), (b) (West 2015). Those rules are found in Texas Rule of Civil Procedure 167. *See generally* Tex. R. Civ. P. 167.

(stating settlement offer may not be made until defendant has filed declaration invoking rule 167 and requiring declaration to be filed no later than forty-five days before trial setting); Tex. R. Civ. P. 167.2(b)(5) (requiring acceptance deadline be no sooner than fourteen days after offer is served).

Husband's settlement offer does not comply with the procedures set forth in Texas Rule of Civil Procedure 167 and section 42.004 of the Texas Civil Practice and Remedies Code. The declaration Husband was required to file invoking rule 167 is not contained in the record before us. *See* Tex. R. Civ. P. 167.2(a) (providing that "a settlement offer under this rule may not be made until a defendant . . . files a declaration invoking this rule"). Even if we could construe Husband's settlement offer as simultaneously functioning as a declaration, the forty-five-day deadline was not met. *See* Tex. R. Civ. P. 167.2(a). Rule 167.5(a) allows a trial court to modify the time limits for filing a declaration or for making a settlement offer, but a written order modifying the rule's time limits is required, and the record before us contains no such order. *See* Tex. R. Civ. P. 167.5(a). Furthermore, the trial court is not authorized to alter the statutory time period imposed for acceptance of a settlement offer. *See* Tex. R. Civ. P. 167.2(b)(5) (prohibiting acceptance deadline shorter than fourteen days from service of offer); *see also In re CompleteRx, Ltd.*, 366 S.W.3d 318, 324–25 (Tex. App.— Tyler 2012, orig. proceeding) (explaining that rule 167.5(a) authorizes trial court to modify only certain time limits set by rule and holding that appellate court was without authority to rewrite rule).

35

Because Husband's settlement offer did not comply with the procedures and time limits set forth in chapter 42 of the civil practice and remedies code and in rule 167, the trial court abused its discretion by awarding attorney's fees under chapter 42. *See* Tex. Civ. Prac. & Rem. Code Ann. § 42.002(e); Tex. R. Civ. P. 167.7; *see also Orix Capital Mkts., LLC v. La Villita Motor Inns, J.V.*, 329 S.W.3d 30, 50 (Tex. App.—San Antonio 2010, pet. denied) (rejecting recovery of attorney's fees because La Villita did not comply with the procedures mandated under chapter 42 and rule 167). We sustain Wife's eighth issue.

## XII. CONCLUSION

Having sustained Wife's eighth issue, we modify the trial court's judgment to delete the first three paragraphs under the heading "Judgment" on page 24 of the corrected final decree of divorce so that the new first paragraph under the heading "Judgment" will begin with the following: "The Court finds that CAROLE ORTH has satisfactorily discharged all of the attorney duties and obligations under chapter 107 of the Texas Family Code, . . . ." Having overruled Son's three issues and having overruled Wife's first through seventh issues, we affirm the trial court's judgment as modified.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DELIVERED: November 25, 2015