Betty JACKSON, Appellant,

v.

Elizabeth SMITH, Appellee.

No. 05-85-00473-CV.

Court of Appeals of Texas, Dallas.

Dec. 31, 1985.

**792**

William Allen Rice, Dallas, for appellant.

Lana Johnson, Dallas, for appellee.

Before STEPHENS, ALLEN and GUIL-LOT, JJ.

ALLEN, Justice.

Betty Jackson ("Betty") appeals from the judgment on an interpleader action brought by Massachusetts Indemnity and Life Insurance Company ("MILICO") to determine who was entitled to the proceeds from a life insurance policy issued to Sylvester Jackson. Betty, the sister of Sylvester Jackson and the designated beneficiary of the policy, claimed that she was entitled to the $70,000 proceeds. Eliza Smith ("Eliza") claimed that, as the alleged com-

mon-law wife of Sylvester Jackson, she was entitled to all, or alternatively, one-half of the proceeds because Sylvester Jackson perpetrated a fraud on the community by designating his sister, rather than Eliza, as beneficiary of the life insurance policy which was purchased with community funds. The trial court rendered judgment awarding $34,250 to Eliza, $34,250 to the estate of Sylvester Jackson, and $1,500 to MILICO for attorneys' fees on its interpleader action. Betty presents five points of error and Eliza brings one cross-point contesting the trial court's judgment. We hold that the trial court erred in awarding $34,250 to Sylvester Jackson's estate. Therefore, we affirm that part of the judgment awarding $34,250 to Eliza Smith and $1,500 to MILICO, and render judgment awarding $34,250 to Betty Jackson.

The case was tried to the court without a jury. The record shows that Eliza and Sylvester Jackson lived together for approximately five years, during which time Sylvester Jackson took out the policy in issue. Sylvester Jackson obtained the policy from Ahmed Kadry and his trainee, Carl Wynn, all of whom worked together for the city of Dallas. Kadry testified that Sylvester Jackson instructed him to designate Betty as the beneficiary of the policy on the insurance application form. Wynn testified that, although he was present when Sylvester Jackson allegedly instructed Kadry to fill in Betty's name on the application, Wynn believed that Eliza was the beneficiary.

The only exhibit at trial was the application form for the policy. The beneficiary is designated as Betty Jackson on page one. On page three, the signatures of Sylvester Jackson and Eliza Smith appear as "proposed insured" and "spouse (if to be insured)," respectively.

Wynn presented the insurance application form to Sylvester Jackson and Eliza for their signatures. Kadry was not present. Eliza testified that she did not read the application before signing it and that she relied on Sylvester Jackson's representations that she "would be taken care of." Wynn testified that Eliza did not read the application before signing it. Kadry testified that all three pages of the application form were attached together at the time Eliza signed it. Kadry and Wynn testified that the policy was a "joint" life insurance policy for both Sylvester Jackson and Eliza Smith; that Sylvester Jackson was automatically Eliza's beneficiary, but that Sylvester Jackson could designate a beneficiary for himself other than Eliza. Apparently both Sylvester Jackson and Eliza "turned in" other insurance policies when they took out the MILICO policy.

The trial court did not file a formal document of findings of fact and conclusions of law pursuant to Rule 296, but the trial court's judgment sets forth ten enumerated findings. The trial court found that community funds were used to purchase the policy. This finding is undisputed, except insofar as Betty contends that Eliza failed to prove she was the common-law wife of Sylvester Jackson. Neither party contests the trial court's award of attorneys' fees to MILICO.

In her first point of error, Betty contends the trial court's finding that Betty was designated as the beneficiary of the MILICO policy without the knowledge of Eliza was so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Betty argues that Eliza's testimony that she did not read the application should have been discounted because she was an interested witness and that the corroborating testimony of Wynn was inherently unreliable because he was "evasive" and was impeached during cross-examination. We disagree with Betty's assertions.

In reviewing a factual sufficiency point of error, we must consider all the evidence presented at trial. *Texas Commerce Bank-Irving v. McCreary*, 677 S.W.2d 643, 644 (Tex.App.—Dallas 1984, no writ). We may set aside the trial court's finding only if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In Re King's Estate*, 150 Tex. 662, 664–65, 244 S.W.2d 660, 661

(1951); *Fortner v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 687 S.W.2d 8, 12 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). Where the trial court is the trier of fact, it is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Henry S. Miller Residential Service Corp. v. Arthur*, 671 S.W.2d 670, 671 (Tex.App.—Dallas 1984, no writ). The trial court is authorized to accept or reject some, all, or none of the disputed evidence. *Id.* at 672.

■ Guided by these principles, we have read the statement of facts before us, and we conclude that the trial court's finding is not so contrary to the weight of the evidence as to be manifestly unjust. Eliza testified that she did not see the first page which carried the beneficiary designation at the time she signed the application. Wynn testified that he did not recall if the first page was attached at the time Eliza signed the application; that Eliza did not read the application after Sylvester Jackson showed signs of impatience at the time Eliza signed the application; and that Wynn himself believed Eliza was the designated beneficiary on the application. Eliza also testified that Sylvester Jackson had told Eliza that she "would be taken care of," and that she was his beneficiary on the MILICO policy.

Betty's evidence consisted entirely of the testimony of Kadry, who was not present when Eliza signed the application. Kadry testified as to MILICO's general policies and as to the prudent conduct of a hypothetical insurance agent trainee. Kadry stated that all three pages of the application form were connected as one continuous page, front and back, and that MILICO would not accept an application form which had been separated into separate pages. Kadry also testified that it was "very possible" for the application to have been folded in a manner that the person signing the application would not see the first page and the beneficiary designation. Kadry stated that a trainee, such as Wynn, should make sure that persons signing insurance application forms read and understand the appli-

cation before signing. Clearly, none of Kadry's testimony goes to show whether Eliza, in fact, knew that Betty was the beneficiary. Betty's first point of error is overruled.

■ Betty next asserts that the trial court erred, as a matter of law, in finding that Betty was designated as beneficiary of the policy without the knowledge of Eliza. Betty argues that one who signs an instrument is presumed to have read it and is charged with knowledge of its contents.

Betty correctly states the general rule that one who voluntarily signs an agreement is obligated to protect himself by reading what he signs and, *absent fraud*, may not excuse himself from the consequences of failing to read what he signs. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex.1982). The exception to the rule is that where a person signs an instrument without reading it, in reliance upon misrepresentations made by another, he is not barred from seeking equitable relief. *Conn v. Hagan*, 93 Tex. 334, 339, 55 S.W. 323, 325 (1900); *Plains Cotton Cooperative Association v. Wolf*, 553 S.W.2d 800, 803 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.); *Lone Star Olds Cadillac Co. v. Vinson*, 168 S.W.2d 673, 675 (Tex.Civ.App.—Dallas 1942, writ ref'd w.o.m.).

In this case, Eliza presented evidence, through her own testimony, that she was induced to sign the insurance application by Sylvester Jackson's misrepresentations. The evidence met all of the elements of actionable fraud. *See Stone v. Lawyers Title Insurance Corp.*, 554 S.W.2d 183, 185 (Tex.1977). Although the trial court did not make a specific finding of fraud, per se, the trial court's finding that "fraud on the community existed when Sylvester Jackson advised Eliza Smith 'she was taken care of' when, in fact, she did not know ... that Betty Ann Jackson ... were beneficiaries [sic] of the policy in question," is tantamount to a finding of fraud. We hold that Eliza is not barred from seeking equitable relief. We overrule Betty's second point of error.

In her fifth point of error, Betty asserts that the trial court erred in finding that Sylvester Jackson and Eliza were husband and wife because no evidence of their common-law marriage was presented at trial. We disagree.

The three elements of a common-law marriage in Texas are (1) an agreement to be married; (2) living together as husband and wife; and (3) holding each other out to the public as such. *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 (Tex.1981). Signing a document in the capacity of husband and wife constitutes some evidence of holding out to the public as husband and wife. *Id.* at 167; *Persons v. Persons*, 666 S.W.2d 560, 563 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). An implied agreement to become husband and wife may be inferred from the evidence which establishes that the two lived together and represented to the public that they were married. *Shelton v. Belknap*, 155 Tex. 37, 282 S.W.2d 682, 684 (1955).

In reviewing a "no evidence" point, we consider only the evidence and reasonable inferences which, viewed in their most favorable light, support the trial court's judgment, and we disregard all evidence and inferences to the contrary. *Estate of Claveria*, 615 S.W.2d at 166; *In re King's Estate*, 150 Tex. at 664, 244 S.W.2d at 661. In this case, it is undisputed that Sylvester Jackson and Eliza lived together for approximately five years. Sylvester Jackson had Eliza sign the MILICO insurance application form as his "spouse." Carl Wynn believed Eliza's name was Eliza Jackson. We hold that there was some evidence presented at trial to support the trial court's finding that a common-law marriage existed between Sylvester Jackson and Eliza Smith. Betty's fifth point of error is overruled.

In her third point of error, Betty contests the trial court's finding that fraud on the community existed because the finding was against the weight of the evidence. Betty argues that she, as Sylvester Jackson's sister, was "the natural object of Sylvester Jackson's bounty"; that Sylvester Jackson designated Betty as beneficiary in order to provide for his children; and that Eliza was adequately provided for by Sylvester Jackson's estate distribution.

We may set aside the trial court's finding only if it is so contrary to the great weight of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. at 665, 244 S.W.2d at 661; *Fortner*, 687 S.W.2d at 12. We have reviewed all of the evidence presented at trial, and we conclude that the trial court's finding of fraud on the community is not manifestly unjust.

The "fraud on the community" or "fraud on the spouse" doctrine is a judicially created concept based on the theory of constructive fraud. *Givens v. Girard Life Insurance Company of America*, 480 S.W.2d 421, 425 (Tex.Civ.App.—Dallas 1972, writ ref'd n.r.e.). Constructive fraud is the breach of a legal or equitable duty which violates a fiduciary relationship, as exists between spouses. A presumption of constructive fraud arises where one spouse disposes of the other spouse's one-half interest in community property without the other's knowledge or consent. *See Redfearn v. Ford*, 579 S.W.2d 295, 296–97 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). The burden of proof is then on the disposing spouse or his donee to prove the fairness of the disposition of the other spouse's one-half community ownership. *Estate of Korzekwa v. Prudential Insurance Company of America*, 669 S.W.2d 775, 777 (Tex.App.—San Antonio 1984, writ dism'd); *Redfearn*, 579 S.W.2d at 297; *Givens*, 480 S.W.2d at 425. Where the donee or beneficiary is related to the disposing spouse or decedent, the courts look to three factors in determining the fairness of the disposition: (1) the relationship of the beneficiary to the decedent; (2) whether special circumstances tend to justify the gift; and (3) whether the community funds used were reasonable in proportion to the remaining community assets. *Givens*, 480 S.W.2d 421, 426, cited with approval in *Great American Reserve Insurance Co. v. Sanders*, 525 S.W.2d 956, 958–59 (Tex. 1975); *Redfearn*, 579 S.W.2d at 297. We

hold that the disposing spouse or his donee has the burden to prove these three factors in order to rebut the presumption of constructive fraud.

■■■ The record shows that Betty proved that she was the sister of Sylvester Jackson, and that she was caring for Sylvester Jackson's minor children by a previous marriage. The record also reflects, however, that Betty did not carry her burden of proof on whether the community funds life insurance proceeds were a reasonable gift, considering the size of the total community estate. The evidence shows that, in the declaration of heirship proceeding, Eliza was awarded a 1979 Ford pick-up truck, a one-half interest in Sylvester Jackson's home and household possessions, and a one-half interest in two parcels of real estate in East Texas. The record does not establish whether these items were obtained during the common-law marriage of Eliza and Sylvester Jackson; if so, Eliza would be entitled to her one-half community interest as a matter of law upon dissolution of the community estate.

The record also shows that Betty was the designated beneficiary on two other policies insuring the life of Sylvester Jackson. One policy, which was purchased during the marriage of Eliza and Sylvester Jackson, had already paid off the $60,000 proceeds to Betty. The record does not show the time of purchase or the amount of the other policy.

On this state of the record, we cannot say that the trial court erred in finding fraud on the community. Betty failed to introduce evidence as to the total value of the community estate and the proportionate value of the proceeds at issue. She thus failed to carry her burden to prove that Eliza was adequately provided for by the remainder of the community assets. *See Redfearn,* 579 S.W.2d at 297 (affirming finding of no fraud where wife provided for by insurance proceeds amounting to one-quarter of community estate); *Horlock v. Horlock,* 533 S.W.2d 52, 55–56 (Tex.Civ. App.—Houston [14th Dist.] 1975, writ dism'd) (affirming finding of no fraud where gifts to daughters constituted only 13.1517% of the total estate); *Davis v. Prudential Insurance Company of America,* 331 F.2d 346, 352 (5th Cir.1964) (reversing judgment awarding proceeds to mother-beneficiary, where proceeds constituted 98% of community estate).

We hold that the trial court's implied finding, that the size of the gift in relation to the total size of the community was a fraud on Eliza Smith's rights, is not manifestly unjust. Betty's third point of error is overruled.

■■■ Betty next contends that the trial court erred in awarding one-half of the insurance proceeds to Eliza and one-half to Sylvester Jackson's estate. We agree.

It is axiomatic that Eliza's community property interest in the life insurance proceeds extends to only one-half of those proceeds. *Givens,* 480 S.W.2d at 427. The insured may dispose of his one-half interest, or one-half the amount of the proceeds, as he pleases. *Id.* Thus, where the surviving spouse establishes fraud on the community, that spouse may recover the one half of the proceeds which represents that spouse's one-half interest in the community property. The other half of the proceeds, representing the disposing spouse's community interest, is a gift to the designated beneficiary and is unaffected by constructive fraud. *See Brown v. Lee,* 371 S.W.2d 694, 696 (Tex.1963).

The trial court's finding of fraud on the community affected only Eliza's half of the proceeds. The other half goes to the designated beneficiary. *Carnes v. Meador,* 533 S.W.2d 365, 371 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Aaron v. Aaron,* 173 S.W.2d 310, 315 (Tex.Civ.App.—Texarkana 1943, writ ref'd w.o.m.); *Davis,* 331 F.2d at 350. Accordingly, we modify the trial court's judgment to award $34,250 to Eliza Smith and $34,250 to Betty Jackson. The estate of Sylvester Jackson takes nothing.

■■■ In her single cross-point, Eliza contends that because there are two judgments in the case, the first dated March 22,

1985, and the second dated July 22, 1985, the second judgment is void. Therefore, she asserts, the appeal should be dismissed because appellant Jackson failed to timely file her brief.

Eliza's contention is without merit. The judgment dated March 22, 1985, did not dispose of all parties and claims, and therefore was an interlocutory judgment. The record shows that only one final judgment, dated July 22, 1985, was entered. Eliza's cross-point is overruled.

Accordingly, the judgment of the trial court is affirmed in part and reversed and rendered in part.