

# NUMBER 13-23-00343-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE MATTER OF THE MARRIAGE OF JUAN DELGADO AND MARTHA DELGADO AND IN THE INTEREST OF A.D. AND S.D., CHILDREN

## ON APPEAL FROM THE 45TH DISTRICT COURT OF BEXAR COUNTY, TEXAS

## MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Contreras and Justices Longoria and Peña Memorandum Opinion on Rehearing by Chief Justice Contreras**

This appeal concerns a final decree of divorce between appellant Martha Delgado and appellee Juan Delgado. Martha contends by four issues that the trial court erred by: (1) granting Juan's claim for reimbursement; (2) finding that certain real property was granted to Martha's daughter "in trust"; (3) finding Martha committed fraud and granting Juan's claim to reconstitute the estate; (4) failing to apply the statute of frauds; and (5) failing to apply the statute of limitations. We affirm in part and reverse and render in

part.

## I.  BACKGROUND

The parties were married in 2012. In 2021, Juan filed his original petition for divorce asking the trial court to award him a disproportionate share of the community property for various reasons. Juan also requested (1) reimbursement to his separate estate for amounts spent benefitting the community and Martha's separate estate, and (2) reimbursement to the community for amounts spent benefitting Martha's separate estate. Finally, Juan's petition alleged that Martha and her adult daughter from a prior relationship, Karime Soria, conspired "to accomplish an unlawful purpose and/or to accomplish a lawful purpose by unlawful means" by "[d]isposing of the proceeds which belong to [Juan] and [Martha] from the sale of the house at 27419 Sherwood, San Antonio, Texas 78260." The petition requested actual damages, exemplary damages, and attorney's fees.

Martha and Karime answered the suit. In amended answers, they argued in part that Juan's civil conspiracy claim was barred due to the statute of frauds and statute of limitations. Martha also argued that she is not liable because she and Juan freely granted their interest in the subject property to Karime, and because Juan consented to and ratified Martha's actions. Martha also filed a counterpetition for divorce which asked the trial court to award her a disproportionate share of the community property for various reasons.

Trial evidence established that, at the time of the marriage in 2012, both parties owned separate real property in San Antonio—Juan owned a vacant lot on Patton Boulevard and Martha owned a home on Mulberry Avenue. During the marriage, the

2

parties purchased land on Shawanee Pass Street and Sherwood Forest Drive, and they built a house on the latter location. In 2016, Juan and Martha executed a general warranty deed as husband and wife conveying their entire interest in the Sherwood Forest property to Karime for "TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration."

Karime testified that Martha called her on the phone shortly before the transfer in 2016 and told her that the property would be transferred to her. Karime noted that Martha had previously been diagnosed with breast cancer, and Martha told her that "she wanted both of them, Juan and my mother, to have the house under me or [for] me [to] take over the home or the property just in case anything happens to [her]." She agreed that the property was transferred to her "to the benefit of [Martha] and [Juan]."[1] Martha and Juan continued living in the house but moved out in 2020 "because Juan built a new home." In January of 2021, Karime sold the Sherwood Forest property for $385,000 because "it wasn't feasible for [her] to live there or move there" and she "felt uncomfortable renting it out."

Karime stated that she had obtained several bank loans on Juan and Martha's behalf during their marriage "because at the time [she] was the only one in the family that had good enough credit." She and Martha opened a checking account at Credit Human bank and the loan funds were deposited into that account. Later, the net proceeds from the sale of the Sherwood Forest property were deposited there.

According to Karime, from 2016 until "late 2020 or early 2021," only Martha and

---

[1] Karime acknowledged that she has helped Juan and Martha financially for as long as they have been together, but she said that was not the reason the Sherwood Forest property was transferred to her.

Juan used the funds in the Credit Human account. However, after the Sherwood Forest proceeds were deposited in the account, Karime used the account for her personal expenses.[2] She explained:

> I only agreed to have the house under my name and that was it . . . . [N]one of us discussed about if I ever sold it who would get money or who the proceeds would belong to. We never had that discussion before. I'm not sure how you would word it in legal terms.

When Martha was asked why the Sherwood Forest property was transferred to Karime in 2016, she testified:

> Because we talked, Juan and I, and we came to an agreement. He said to me—we were talking and because I went through cancer I was not at peace. I was not—there are days that I don't feel good. I feel good and bad, and it was his decision—he said that if we wanted—that if I wanted to that we could place the house under the name of Karime in case something were to happen to me. . . . . He said—he told me that it was for me for my peace of mind for us to put the house under the name—under Karime's name in case if something were to happen to me so that the children would remain with Karime at the house. . . . [H]e said then let's go ahead and put it under Karime's name because Karime is the only person that we trust. The children, they see Karime as a second mother.

When asked whether she considered the transfer to be a "gift" to Karime, Martha stated: "I don't know if you call it a gift, but we placed it under her name."

After the property was sold and the proceeds deposited into the Credit Human bank account, Martha removed herself from the account without consulting Juan. When asked why she did so, Martha testified: "Because I no longer—I no longer had any reason to withdraw money from there. The money that was there was from the sale of the house. The house belonged to Karime. It was Karime's."

---

[2] A bank statement entered into evidence showed that over $80,000 in withdrawals and debits were made on the account between January 7, 2021 (when the Sherwood Forest proceeds were deposited) and January 20, 2021. Karime agreed that she was responsible for all of those transactions.

Juan testified through an interpreter that he does not speak English and can only read and write in Spanish "[a] little." He acknowledged that he signed the deed conveying the property to Karime, but he said the deed was not translated or explained to him beforehand. He stated:

> [W]e had agreed to put it under Karime's name. At that moment, [Martha] was going through the cancer and I am not documented and the children were younger. So we were worried about what was going to happen to her. She said what are we going to do. You don't have any documents. Anything can happen with you. So we decided to put the house under Karime's name for anything that would happen, but nothing happened.

Juan denied that he intended for the property to be given as a gift to Karime.[3] However, he conceded that there were no documents preventing Karime from selling the house or providing that, if she did, he and Martha would be entitled to the proceeds. Moreover, he acknowledged that no one forced him to sign the deed.

When asked what conversations he had with Martha concerning Karime's sale of the Sherwood Forest property, Juan stated that Martha told him in December of 2020 "that certain details were going to be fixed" and "we agree[d] that she was going to give me [$]250,000 from that house." Juan testified that he did not agree with the initial listing price of $430,000 because it was too low.[4] He said the property was listed at that price

---

[3] He explained:

> We had talked that if there was a problem with me—that if I were to be deported to Mexico and she was sick, if I were deported and if something happened with her and with me that Karime was going to take care of the children and the property, but I didn't tell her I'm going to give it to you—gift it over to you.

Juan also stated that he and Martha separately paid off the loans which Karime had taken out.

[4] Tax records introduced into evidence showed that the assessed value of the property was $405,630 in 2020 and $432,470 in 2021. Karime could not recall what price the house was initially listed at, but she testified: "I always thought that as soon as somebody makes an offer you accepted it so I just accepted the first offer."

"for a few days and then it was lowered" without his consent.

Juan also testified that he sold his separate Patton Boulevard property for around $170,000 during the marriage, and that some of the resulting funds were used to purchase the Shawanee Pass and Sherwood Forest properties. Juan also agreed that he spent "at least $12,000 on materials and time" in improving Martha's Mulberry Avenue property during the marriage, and he claimed that, in part because of those efforts, the property improved in value by $84,000 over that time. However, he did not have documentary proof of his expenses.

On April 10, 2023, the trial court signed a final decree of divorce which, in relevant part, granted Juan's requests for reimbursement and reconstitution of the community estate and awarded him a $200,000 judgment against Martha "[f]or the purpose of equalizing the division of community property."[5] The decree stated that Juan's claim for civil conspiracy and his requests for exemplary damages and attorney's fees were denied.[6] The court later entered the following relevant findings of fact:

8.      The Court finds from the evidence that [Juan] worked toward enhancing the rental property of [Martha's] separate property estate, exerting time and effort in the home enhancement and the reimbursement claim of [Juan] should be granted.

. . . .

9.      The Court finds from the evidence and has granted [Juan]'s request for the reconstitution of the value of the community property estate,

---

[5] The decree also stated that: (1) each party shall retain all personal property and cash in their possession or control and all debts in their name; (2) Juan is awarded the parties' 2021 Toyota RAV-4 and 2008 Dodge Ram and Martha is awarded the parties' 2016 Dodge Ram; and (3) the Shawanee Pass property shall be listed for sale within thirty days and the net proceeds split evenly between the parties.

[6] The decree also designated both parties as joint managing conservators of their two minor children, with Martha having the exclusive right to determine their primary residence, and Juan having standard visitation. The portions of the decree affecting the parent-child relationship are not at issue in this appeal.

6

and division thereof, is a just and right division of community property having due regard for the rights of each party and the children of the marriage.

10.    The Court finds that [Juan] and [Martha] owned 27419 Sherwood, San Antonio, Texas 78260 as community property prior to transferring to [Karime] in trust.

11.    The Court finds no credible evidence that supports [Martha]'s allegation that the [p]arties' intent was to transfer by way of gift to [Karime] their community property located [at] 27419 Sherwood, San Antonio, Texas 78260.

12.    The Court finds that as part of the reconstitution of the community estate, [Juan] is awarded a money judgment against [Martha] in the amount of $200,000.00 as part of a just and right, fair and equitable, division of the community estate.

. . . .

25.    The Court did not grant a conspiracy finding against [Martha] and [Karime].

26.    The Court found fraud on the community by [Martha].

This appeal followed.[7]

## II.    DISCUSSION

### A.    Applicable Law and Standard of Review

In a divorce decree, the trial court must order a division of the community estate "in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE ANN. § 7.001; *see Pearson v. Fillingim*, 332 S.W.3d 361, 362 (Tex. 2011) (per curiam). "Each spouse bears the burden to present sufficient evidence of the value of the community estate to enable the trial court

---

[7] On August 30, 2023, the Court dismissed this appeal for want of prosecution on grounds that appellant had not requested or made payment arrangements for the clerk's record and had otherwise failed to respond to a notice from the Clerk of the Court requiring response or other action. *See* TEX. R. APP. P. 37.3, 42.3(b), (c). On September 18, 2023, we granted appellant's amended motion for rehearing and reinstated the appeal.

7

to make a just and right division." *Kelly v. Kelly*, 634 S.W.3d 335, 348 (Tex. App.—Houston [1st Dist.] 2021, no pet.). This standard "may at times lead to a disproportionate division of assets and liabilities of the parties, depending on the circumstances that courts may consider in refusing to divide the marital estate equally." *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998); *see Murff v. Murff*, 615 S.W.2d 696, 698–99 (Tex. 1981) (noting that, in making a just and right division of property, "the trial court may consider such factors as the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property").

After a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review such findings for legal and factual sufficiency of the evidence by the same standards applied to a jury verdict. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005) (describing legal sufficiency standard of review); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (describing factual sufficiency standard of review). As the trier of fact, the trial court is the sole judge of witnesses' credibility and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). It is the province of the trial court in a bench trial to resolve conflicting evidence, and we must assume that it resolved all conflicts in accordance with its fact findings. *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 894 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *City of Keller*, 168 S.W.3d at 819–20).

Overall, the trial court's division of the community estate is reviewed for an abuse of discretion. *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (citing *Murff*, 615 S.W.2d at 698). A trial court has wide discretion in making a just and right division, and the appellant bears the burden to show from the record that the division was so disproportionate, and thus unfair, that it constitutes an abuse of discretion. *Banker v. Banker*, 517 S.W.3d 863, 870 (Tex. App.—Corpus Christi–Edinburg 2017, pet. denied); *Handley v. Handley*, 122 S.W.3d 904, 907 (Tex. App.—Corpus Christi–Edinburg 2003, no pet.) ("[A] trial court's division of property that is manifestly unjust is an abuse of discretion."). "In an abuse of discretion analysis, legal and factual sufficiency are not independent grounds of error, but rather relevant factors in assessing whether the trial court abused its discretion." *Banker*, 517 S.W.3d at 869 (citing *Handley*, 122 S.W.3d at 907). "There is generally no abuse of discretion on grounds of insufficiency if some probative evidence supports the trial court's findings." *Id.* at 869–70; *see In re Marriage of Rice*, 96 S.W.3d 642, 649 (Tex. App.—Texarkana 2003, no pet.) ("If more than a scintilla of evidence exists to support the lower court's finding, the legal sufficiency challenge fails."); *Henry v. Henry*, 48 S.W.3d 468, 473 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("More than a scintilla of evidence exists where the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.").

In Texas, "[c]ommunity property consists of the property, other than separate property, acquired by either spouse during marriage." TEX. FAM. CODE ANN. § 3.002. Separate property is defined as, among other things, "the property owned or claimed by the spouse before marriage." *Id.* § 3.001(1). "Property acquired in exchange for separate

9

property becomes the separate property of the spouse who exchanged the property." *In re Marriage of Douthit*, 573 S.W.3d 927, 930 (Tex. App.—Amarillo 2019, no pet.) (quoting *Ridgell v. Ridgell*, 960 S.W.2d 144, 148 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.)).

Property possessed by either spouse during or on dissolution of marriage is presumed to be community property. TEX. FAM. CODE ANN. § 3.003(a). To rebut the community property presumption, a party must prove the property is separate property by clear and convincing evidence. *Id.* § 3.003(b). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007; *see id.* § 1.001(b). The party seeking to rebut the community property presumption must trace the assets on hand during the marriage back to property that is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975); *Boyd v. Boyd*, 131 S.W.3d 605, 612 (Tex. App.—Fort Worth 2004, no pet.). The tracing process consists of "establishing the separate origin of the [relevant] property through evidence showing the time and means by which the spouse originally obtained possession of the property." *Boyd*, 131 S.W.3d at 612. "[T]he burden of tracing is a difficult, but not impossible burden to sustain." *Latham v. Allison*, 560 S.W.2d 481, 484 (Tex. App.—Fort Worth 1977, writ ref'd n.r.e.). We resolve any doubt as to the character of the property in favor of the community estate. *Akin v. Akin*, 649 S.W.2d 700, 703 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e).

In general, absent tracing of the funds, mere testimony that property was purchased with separate funds will not suffice to rebut the community property

10

presumption. *In re Marriage of Nash*, 644 S.W.3d 683, 697 (Tex. App.—Texarkana 2022, no pet.) ("Conclusory or uncorroborated testimony that funds are separate property is insufficient to rebut the community presumption, unless there is also evidence that traces the funds."); *Irvin v. Parker*, 139 S.W.3d 703, 708 (Tex. App.—Fort Worth 2004, no pet.) ("[M]ere testimony that property was purchased with separate funds, without any tracing of the funds, is insufficient to rebut the community presumption."); *Robles v. Robles*, 965 S.W.2d 605, 614 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (same).

## B.      Reimbursement

By her first issue on appeal, Martha argues the trial court erred by granting Juan's claim for reimbursement based on the money, time, and effort he allegedly expended in enhancing Martha's separate Mulberry Avenue property. She asserts that Juan's testimony in this regard "was so vague, inconclusive, and lacking in specificity as to the time, place[,] cost, and value that it cannot support" the trial court's finding.

In a divorce proceeding, a party is entitled to reimbursement to his or her marital estate "when community time, talent and labor are utilized to benefit and enhance a spouse's separate estate, beyond whatever care, attention, and expenditure are necessary for the proper maintenance and preservation of the separate estate, without the community receiving adequate compensation." *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982); *see Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984) ("The right to reimbursement is only for the value of the time, toil and effort expended to enhance the separate estate other than that reasonably necessary to manage and preserve the separate estate, for which the community did not receive adequate compensation."); *see*

11

*also* TEX. FAM. CODE ANN. § 3.402(a).[8] "The rule of reimbursement is purely an equitable one." *Vallone*, 644 S.W.2d at 458 (citing *Colden v. Alexander*, 171 S.W.2d 328 (1943)); *see also* TEX. FAM. CODE ANN. § 3.402(f). As with property division, the trial court is "accorded great latitude in applying equitable principles to determine reimbursement claims." *Richardson v. Richardson*, 424 S.W.3d 691, 700 (Tex. App.—El Paso 2014, no pet.). "The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable." *Id.* at 459.

Accordingly, to establish his reimbursement claim, Juan had to prove: (1) the value of the uncompensated time, toil, and effort he expended in enhancing Martha's separate property; and (2) that this value exceeded what was reasonably necessary to manage and preserve the separate property. *See Lifshutz v. Lifshutz*, 199 S.W.3d 9, 29 (Tex. App.—San Antonio 2006, pet. denied) ("Although 'mathematical certainty' is not required, some evidence was required to be presented regarding the value of the time reasonably necessary to manage and preserve the separate property."); *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 665 (Tex. App.—San Antonio 1990, no writ) (citing *Jensen*, 665 S.W.3d at 110).[9]

---

[8] This law was recently codified in § 3.402(a) of the family code, which provides: "A claim for reimbursement exists when one or both spouses use property of one marital estate to confer on the property of another marital estate a benefit which, if not repaid, would result in unjust enrichment to the benefited estate." TEX. FAM. CODE ANN. § 3.402(a). However, this statutory language applies only to a claim for reimbursement that was filed after on September 1, 2023, or was "pending in a trial court" on that date. Act of May 21, 2023, 88th Leg., R.S., H.B. 1547, § 6–7.

[9] Martha argues that, even if Juan were successful in establishing both elements, he is only entitled to recover the value of his uncompensated time, toil, and effort—he is not entitled to recover the enhanced value of the separate property. *See Lifshutz v. Lifshutz*, 199 S.W.3d 9, 28–29 (Tex. App.—San Antonio 2006, pet. denied) (concluding, without reference to authority, that appellee was "not entitled to the enhanced value of the separate property, but only to the value of time, toil, and labor utilized to benefit the [property] beyond that which was reasonably necessary for [appellant] to spend managing and preserving

Juan asserts on appeal that his trial testimony and the "surrounding circumstances of the property" support the trial court's finding. We disagree. Juan stated that he sold his separate Patton Boulevard property and that the couple used some of the funds from that sale to purchase the Shawanee Pass and Sherwood Forest properties. However, he did not state that he used any funds from the Patton Boulevard sale, or any other separate property, to enhance Martha's Mulberry Avenue property. Moreover, though Juan agreed with his counsel that he spent "at least $12,000 on materials and time" in improving the Mulberry Avenue property, and that the value of the Mulberry property increased by $84,000 during the marriage due to his "work and efforts," there was no evidence that these amounts exceeded what was reasonably necessary to manage and preserve the property. *See Lifshutz*, 199 S.W.3d at 29. Accordingly, the evidence was legally insufficient to support his reimbursement claim. *See id.*; *Gutierrez*, 791 S.W.2d at 665.

Martha's first issue is sustained.

## C. Reconstitution of Estate

By her second issue, Martha contends the trial court erred by finding that the Sherwood Forest property was granted to Karime "in trust." By her third issue, she argues the court erred by finding that she committed fraud against the community. And by her

---

the [property]"). We note that the prior version of the statute states generally that "[r]eimbursement for funds expended by a marital estate for improvements to another marital estate shall be measured by the enhancement in value to the benefited marital estate." Act of June 1, 2009, 81st Leg., R.S., ch. 768, 2009 Tex. Gen. Laws 1950, 1951 (former TEX. FAM. CODE ANN. § 3.402(d)) (repealed 2023). On the other hand, in accordance with *Lifshutz*, the amended statute states that

> if the benefit resulted from the use of time, toil, talent, or effort to enhance the value of property of a spouse's separate estate, then the value of the benefit conferred is measured by the value of the time, toil, talent, or effort beyond that which was reasonably necessary to manage and preserve the spouse's separate property.

TEX. FAM. CODE ANN. § 3.402(d)(3) (eff. Sep. 1, 2023). In light of our conclusion as to this issue, we need not determine the proper measure of recovery. *See* TEX. R. APP. P. 47.1.

13

fourth issue, she contends the trial court erred by failing to apply the statute of frauds. These three issues each concern the trial court's decision to reconstitute the marital estate to include the proceeds from Karime's sale of the Sherwood Forest property. We address them together.

Family code § 7.009 states:

If the trier of fact determines that a spouse has committed actual or constructive fraud on the community, the court shall:

(1)     calculate the value by which the community estate was depleted as a result of the fraud on the community and calculate the amount of the reconstituted estate; and

(2)     divide the value of the reconstituted estate between the parties in a manner the court deems just and right.

TEX. FAM. CODE ANN. § 7.009(b); *see id.* § 7.009(a) (defining "reconstituted estate" as "the total value of the community estate that would exist if an actual or constructive fraud on the community had not occurred"). In making a just and right division of the reconstituted estate, the court may grant "any legal or equitable relief necessary," including "awarding to the wronged spouse an appropriate share of the community estate remaining after the actual or constructive fraud on the community" and/or "awarding a money judgment in favor of the wronged spouse against the spouse who committed the actual or constructive fraud on the community." *Id.* § 7.009(c).

"A constructive trust is a creation of equity intended to prevent a wrongdoer from profiting from his wrongful acts." *Freeman v. Harleton Oil & Gas, Inc.*, 528 S.W.3d 708, 733 (Tex. App.—Texarkana 2017, pet. denied). The trial court may impose a constructive trust when one party commits fraud or breaches a confidential relationship. *Id.* "In addition to either actual fraud or the breach of a confidential relationship, the imposition of a constructive trust requires unjust enrichment of the wrongdoer and the identification of a

14

specific res that can be traced back to the original res acquired by fraud or breach of a confidential relationship." *Id.*; *see Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex. 1974) ("Where a person wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property, the other is entitled at his option to enforce either (a) a constructive trust of the property so acquired, or (b) an equitable lien upon it to secure his claim for reimbursement from the wrongdoer.").

Martha first argues that the evidence "clearly shows the funds were traced from the title company to the Credit Human [a]ccount and that Karime was the only person who controlled the funds after they were deposited"; therefore, she argues, the proceeds from the sale were not in her or Juan's possession at the time the divorce petition was filed, and the community property presumption does not apply. *See* TEX. FAM. CODE ANN. § 3.003(a).[10] She cites case law establishing that "the major consideration in determining the characterization of property as community or separate is the intention of spouses shown by the circumstances surrounding the inception of title." *Boyd*, 131 S.W.3d at 612 (noting that "[i]nception of title occurs when a party first has a right of claim to the property by virtue of which title is finally vested"). However, the fact that the presumption does not apply does not preclude a finding that certain property was community in character. In any event, the trial court's decision to reconstitute the estate was not dependent on a finding that the Sherwood Forest sale proceeds were actually part of the community estate, and it made no such finding. Indeed, reconstitution is proper only upon a finding that the value of the community estate was "depleted" due to one spouse's fraud. *See*

---

[10] Even though Juan testified that the Sherwood Forest property was partly purchased with funds from the sale of his separate Patton Boulevard property, he does not dispute the trial court's finding that the Sherwood Forest property was entirely community property at the time of its conveyance to Karime.

15

TEX. FAM. CODE ANN. § 7.009(b)(1). Here, the court found that the community estate was depleted when Martha fraudulently deprived it of its interest in the Sherwood Forest sale proceeds.

Martha next contends that: (1) Karime's conveyance in 2021 is not void for lack of consideration; and (2) even if Karime held the property "in trust" for Juan and Martha, that "would not render Karime's prior [sic] conveyance void." *See* TEX. PROP. CODE ANN. § 114.082 ("If property is conveyed or transferred to a trustee in trust but the conveyance or transfer does not identify the trust or disclose the names of the beneficiaries, the trustee may convey, transfer, or encumber the title of the property without subsequent question by a person who claims to be a beneficiary under the trust or who claims by, through, or under an undisclosed beneficiary."). But Juan was under no burden to establish that Karime's 2021 conveyance was void, because he was not seeking to set aside the deed. Instead, again, to establish his entitlement to reconstitution of the estate for property division purposes, Juan needed only to show that Martha committed actual or constructive fraud which depleted the value of the community estate. *See* TEX. FAM. CODE ANN. § 7.009(b). The question we must answer is whether, given the record before us, the trial court erred by finding that Juan made that showing.

A spouse commits actual fraud when the spouse transfers community property or expends community funds for the primary purpose of depriving the other spouse of the use and enjoyment of the assets involved in the transaction. *Boothe v. Boothe*, 681 S.W.3d 916, 924 (Tex. App.—Houston [14th Dist.] 2023, no pet. h.); *Strong v. Strong*, 350 S.W.3d 759, 771 (Tex. App.—Dallas 2011, pet. denied); *Wright v. Wright*, 280 S.W.3d 901, 909 (Tex. App.—Eastland 2009, no pet.). Actual fraud between spouses involves

16

dishonesty of purpose or intent to deceive. *Wright*, 280 S.W.3d at 909.

On the other hand, constructive fraud is the breach of a legal or equitable duty which violates a fiduciary relationship, as exists between spouses. *Id.* Constructive fraud does not require an intent to defraud. *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). A presumption of constructive fraud arises where one spouse disposes of the other spouse's interest in community property without the other's knowledge or consent. *Cantu v. Cantu*, 556 S.W.3d 420, 427 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *Wright*, 280 S.W.3d at 909. When the presumption applies, the burden of proof is "upon the disposing spouse or his [or her] donee to prove the fairness of the disposition of the other spouse's one-half community ownership." *Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex. App.—Dallas 1985, no writ); *see Jean*, 118 S.W.3d at 9. In determining whether a disposition is fair, courts consider: (1) the size of the property disposed of in relation to the total size of the community estate; (2) the adequacy of the estate remaining to support the other spouse after the disposition; and (3) "the relationship of the parties involved in the transaction or, in the case of a gift, of the donor to the donee." *Puntarelli v. Peterson*, 405 S.W.3d 131, 138 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Redfearn v. Ford*, 579 S.W.2d 295, 297 (Tex. App.—Dallas 1979, writ ref'd n.r.e.); *see Jackson*, 703 S.W.2d at 795.

In this case, there was not more than a scintilla of probative evidence to support a finding that Martha committed fraud against the community. Juan freely and voluntarily signed the deed and is therefore charged with knowledge of its contents.[11] *See McMeens*

---

[11] Juan's inability to speak English and limited proficiency in written Spanish do not affect the legal significance of the deed. *See Tamez v. Sw. Motor Transp., Inc.*, 155 S.W.3d 564, 570 (Tex. App.—San Antonio 2004, no pet.) ("[I]lliteracy is no defense and will not relieve a party of the consequences of the

17

*v. Pease*, 878 S.W.2d 185, 189 (Tex. App.—Corpus Christi–Edinburg 1994, writ denied) ("We find no harshness in holding that a grantor, executing a transfer of land, is charged with knowledge of the conveyance made to the grantee."); *see also Town N. Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 492 (Tex. 1978) ("[A] party to a written agreement . . . is charged as a matter of law with knowledge of its provisions and as a matter of law cannot claim fraud when he is bound to the provisions unless he can demonstrate that he was tricked into its execution."). The deed stated that the property was being transferred to Karime for $10 "and other good and valuable consideration"—it did not state that the property was to be held in trust for any purpose or that Juan and Martha would retain any residual interest in the proceeds should the property be sold. Further, there was no evidence that Martha or Karime made any misrepresentation or intended to deceive Juan into signing the deed. Thus, the evidence did not support a finding of actual fraud.

The evidence also did not support a finding of constructive fraud because there is no indication that Martha disposed of community property without Juan's knowledge or consent. *See Cantu*, 556 S.W.3d at 427; *Wright*, 280 S.W.3d at 909.[12] Juan denied that the transfer to Karime was intended as a gift, and he testified that "we agree[d] that she was going to give me [$]250,000 from that house." However, it is undisputed that this agreement, if it existed, was not put in writing. Under the statute of frauds, an oral

---

contract."). And there is no allegation or evidence that Juan lacked the mental capacity to execute the deed. *See Turner v. Hendon*, 269 S.W.3d 243, 247–48 (Tex. App.—El Paso 2008, pet. denied) ("'Mental capacity' means that, at the time of the execution of the deed, the grantor must have had sufficient mind and memory to understand the nature and effect of his act. . . . Absent proof and determination of mental incapacity, a person who executes a document is presumed to have read and understood it.").

[12] Because Juan knew of and consented to the transfer of the Sherwood Forest property to Karime, the presumption of constructive fraud does not apply, and Martha was not required to prove the fairness of the transaction. *See Jackson v. Smith*, 703 S.W.2d 791, 795 (Tex. App.—Dallas 1985, no writ); *Jean v. Tyson-Jean*, 118 S.W.3d 1, 9 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

agreement in this regard would not be enforceable. *See* Tex. Bus. & Com. Code Ann. § 26.01(b)(4) (providing that "a contract for the sale of real estate" is not enforceable unless it is in writing and signed by the person to be charged).

Juan contends that Martha waived any statute of frauds argument for appeal because she pleaded that defense only as to his conspiracy claim, and he asserts the issue was not tried by consent. *See* Tex. R. Civ. P. 94; *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991) ("The failure to plead an affirmative defense under rule 94 is an issue that must be raised in the trial court, or it may not be urged on appeal."). We disagree. The section of Martha's live answer concerning affirmative defenses states in its entirety as follows:

a. Respondent is not liable to Petitioner for Fraud, Actual Fraud and Constructive Fraud as it relates to the real property located at 27419 Sherwood, San Antonio, Texas 78260. Petitioner's claim[s] are barred by the four[-]year Statute of Limitations in Texas Civil and Practice & Remedies Code sections 16.004 and 16.051. Inception of title for 27419 Sherwood, San Antonio, Texas 78260 commenced on October 19, 2016[,] when Petitioner Juan Delgado and Respondent Martha Delgado granted the property to Karime Soria via a General Warranty Deed.

b. Respondent is not liable to Petitioner because Petitioner's claim of Civil Conspiracy claiming that the proceeds from the sale of the home at 27419 Sherwood, San Antonio, Texas 78260 belong to Petitioner and Respondent is barred by the Statute of Frauds in Texas Business & Commerce Code section 26.01.

c. Respondent is not liable to Petitioner because Petitioner's claim of Civil Conspiracy is barred by Two-Year Limitation Period[], Tex. Civ. Prac. & Rem. Code Sec. 16.003.

d. Respondent is not liable to Petitioner for his claim that he has an interest in the proceeds from the sale of the house at 27419 Sherwood, San Antonio, Texas 78260 because of Waiver. Petitioner granted the property to Karime Soria via the General Warranty Deed and therefore gave up his rights in and to the property.

Because Juan did not file special exceptions to Martha's answer, we must construe it

19

liberally in her favor and look to her intent. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). Although the statute of frauds is mentioned only in paragraph (b) above, and that paragraph specifically mentions only Juan's conspiracy claim, the entire pleading makes clear that Martha's statute of frauds defense applied broadly to Juan's general claim that "the proceeds from the sale of the [Sherwood Forest property] belong to [the parties]."

We note that "[c]ivil conspiracy is a derivative action premised on an underlying tort." *Henkel v. Emjo Investments, Ltd.*, 480 S.W.3d 1, 7 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("The required elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more *unlawful*, overt acts; and (5) damages as a proximate result." (emphasis added)). The only "underlying tort" alleged in this suit is Martha's constructive fraud. Accordingly, the only reasonable way to construe Martha's answer is that the statute of frauds defense applies to Juan's fraud claim. We conclude the statute of frauds defense was properly pleaded and conclusively established by the evidence at trial; therefore, the trial court erred in finding that a constructive trust resulted from the 2016 conveyance of the Sherwood Forest property to Karime.

For the foregoing reasons, we conclude there was insufficient evidence to support the trial court's finding that Martha committed fraud on the community or that the Sherwood Forest property was transferred to Karime "in trust." Accordingly, the trial court abused its discretion in reconstituting the estate to include the proceeds from the property's sale. *See* TEX. FAM. CODE ANN. § 7.009(b). We sustain Martha's second, third,

and fourth issues.[13]

### III. CONCLUSION

Because we have found the trial court abused its discretion in granting Juan's claims for reimbursement and reconstitution of the marital estate due to fraud, we reverse that portion of the judgment awarding Juan a $200,000 judgment against Martha "[f]or the purpose of equalizing the division of community property," and we render judgment that Juan take nothing by way of those claims. The remainder of the judgment is affirmed.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
28th day of March, 2024.

---

[13] In light of our conclusion, we need not address Martha's fifth issue, which argues that Juan's fraud claim was barred by limitations. *See* TEX. R. APP. P. 47.1.